## CHICAGO AND ERIE RAILROAD COMPANY ET AL. *v.* DINIUS.

[No. 21,665.    Filed December 17, 1913.]

1. **APPEAL.**—*Decision on Former Appeal.*—*Questions Foreclosed.*— A question of jurisdiction, which was presented by the record and urged in appellants' brief on a former appeal of the cause, is foreclosed on a subsequent appeal. p. 603.

2. **APPEAL.**—*Subsequent Appeals.*—*Questions Reviewable.*—A second appeal of a case formerly reversed brings up for review only the proceedings subsequent to the reversal, since all questions presented by the first record are considered as finally determined by the judgment on appeal, and all questions that were not expressly affirmed or reversed are by implication deemed affirmed. p. 603.

3. **RAILROADS.**—*Injuries to Servant.*—*Injuries on Track.*—*Complaint.*—*Duty to Maintain Track.*—In a brakeman's action against the railroad company by whom he was employed and a connecting railroad company, for an injury sustained while coupling cars at a point jointly used by the defendants, a complaint alleging that each defendant had a delivery track in the yards and cross-over tracks running from their main lines to the delivery tracks, that there was a wye uniting the lines of the defendants with the delivery tracks, that there was a short space of track, used in common by both defendants continuously for three months prior to the accident, at the intersection of said wye and the delivery tracks, which space of track defendants each carelessly neglected to ballast, so that it was dangerous and unsafe for switchmen, that the injury occurred on said space of track, that the wye and all the tracks so used in common were upon the grounds of plaintiff's employer, but that the roadbeds were constructed by the other defendant, that the defendants had traffic arrangements with each other, and at the time of the injury they jointly occupied, maintained and used the space of track between the wye and delivery tracks, was sufficient to show that it was the duty of defendants jointly and severally to maintain the roadway at the place where the injury occurred, in a reasonably safe condition. p. 610.

4. **RAILROADS.**—*Joint Use of Tracks.*—*Injuries to Employes on Tracks.*—*Duty to Maintain Tracks.*—Where by virtue of the arrangement by which two railroad companies occupied the same ground with their tracks or roadbed, the employes of each were by implication, at least, mutually invited to use the

place in pursuing their duties, each company owed to its own employes a duty, arising out of the relation of master and servant, and to the employes of the other a like duty, because of the invitation, to use ordinary care to make the place reasonably safe. p. 611.

5. MASTER AND SERVANT.— *Injuries to Servant.*— *Complaint.*— *Knowledge of Defects.*—*Assumption of Risk.*—Where the complaint, in an action by a railroad brakeman for injuries sustained while crossing the track to make a coupling, alleged that the tracks were properly ballasted and made safe for employes to work over and along, except at the point where plaintiff was injured and for a space of five feet on each side thereof, "so that there was nothing to warn or lead * * * plaintiff to know or suspect" the existence of the defective place, that he did not know of such defect, and that he was compelled to cross the track ahead of a slowly moving car in order to effect the coupling of that car to a standing car, and that in crossing the track he stepped into a hole between the ties, whereby he suffered the injuries complained of, it cannot be said as a matter of law that plaintiff knew of the defects in the track and the danger which might exist in attempting to cross, and that he voluntarily encountered the risk. p. 612.

6. MASTER AND SERVANT.—*Injuries to Servant.*—*Contributory Negligence.*—*Complaint.*—In an action by a railroad brakeman for injuries sustained while crossing the track to make a coupling, a complaint alleging that the tracks were properly ballasted and made safe for employes to work over and along, except at the point where plaintiff was injured, and for a space of five feet on each side thereof, so that there was nothing to cause plaintiff to know or suspect the existence of the defect, that he did not know of such defect, and that he was compelled to cross the track ahead of a slowly moving car in order to effect the coupling of that car to a standing car, and that in crossing he stepped into a hole between the ties and fell, so that the moving car ran over him, is not open to the objection that it shows contributory negligence on the part of plaintiff in attempting to cross in front of such moving car. p. 613.

7. RAILROADS.—*Negligence.*—*Ballasting Tracks.*—Negligence by a railroad company in ballasting its tracks may be inferred from the existence of an isolated hole between the ties of a switch track. p. 614.

8. MASTER AND SERVANT.—*Safe Place of Work.*—*Duty of Master.*— It is the duty of the master to use ordinary care to provide the servant a reasonably safe place in which to work. p. 614.

9. MASTER AND SERVANT.—*Safe Place of Work.*—*Violation of Duty.* —It is a violation of duty and negligence to subject a servant

to a risk not ordinarily incident to the employment, unless the extraordinary hazard be obvious to him, or he be apprised of it in some manner.  p. 614.

10.  MASTER AND SERVANT.—*Injuries to Servant.—Allegations of Complaint.—Proximate Cause.*—In an action against a railroad company by a brakeman for injuries by stepping into a hole between ballasted portions of the track, whereby he fell and was run over by a car, a complaint alleging that by failure to properly ballast the roadbed at the point where plaintiff was injured the track was rendered unsafe for employes in switching cars, that the defective condition was wholly the cause of plaintiff's injuries, and that wholly on account of the negligence of the defendants in not providing him a safe place to work, and in not having the track properly ballasted at the point where plaintiff fell, and in knowingly leaving said hole, he received the injuries complained of, sufficiently shows that the existence of the hole or unballasted portion of track into which plaintiff stepped was the proximate cause of the injury. p. 616.

11.  LIMITATION OF ACTIONS.—*Commencement of Time.—Filing Amended Complaint.*—Where an amended complaint is filed which sets up no new matter or claim, but merely amplifies and restates with more certainty, or in a different form, the cause of action set out in the original pleading, such amended complaint relates back to the commencement of the suit, and the statute of limitations is arrested at that point.  p. 616.

12.  TRIAL.—*General Verdict.—Scope.*—A general verdict for plaintiff finds the existence of all the facts essential to a recovery on the complaint.  p. 617.

13.  TRIAL.—*General Verdict.—Answers to Interrogatories.*—To overcome a general verdict for plaintiff by the jury's answers to interrogatories, it must be shown that such answers present a positive and irreconcilable contradiction of some one of the facts essential to a recovery by plaintiff.  p. 618.

14.  MASTER AND SERVANT.—*Injuries to Servant.—Trial.—Answers to Interrogatories.*—Where the complaint by a brakeman against a railroad company alleged that plaintiff was injured by stepping into a hole between ballasted portions of the track, whereby he fell and was run over by a car, and proceeded on the theory of negligence in permitting an isolated hole or defect in a track otherwise properly ballasted, answers to interrogatories showing that the tracks when first laid were ballasted with cinders the whole length, that afterwards, at the point where plaintiff fell, the rails and ties had been removed and then the track was slightly reballasted and it settled, that about three months before the injury the track was again slightly re-

ballasted and raised on one side, and that at such point the track was not in a uniform condition for a distance of ten feet, are not in conflict with a verdict for plaintiff but rather support it on the question of a violation of duty by defendant as well as on the question of assumption of risk.   p. 618.

15. APPEAL.—*Subsequent Appeal.—Erroneous Decision.—Law of the Case.*—Even if a former decision of a cause on appeal was wrong, and has since been impliedly overruled by other cases, it must still remain the law throughout all subsequent stages of the case on identical facts whether the question arises in the same manner or not.   p. 619.

16. MASTER AND SERVANT.—*Injuries to Servant.—Trial.—Answers to Interrogatories.*—In a brakeman's action for personal injuries suffered while attempting to cross the track to effect the coupling of cars, answers by the jury to interrogatories showing that plaintiff stepped on the edge of a tie near the end, and the unballasted track at that point caused his foot to slip into the hole and that stepping into the hole caused him to fall to the ground where he was struck by the moving car and injured, and showing that the approaching car was twenty-five or thirty feet away when he started to cross the track and that he could have crossed in safety before the car struck him, if he had not stepped into the hole and fallen, establish a direct causal connection between plaintiff's injury and the defective track and entirely harmonize with the complaint which alleged that the defective condition of the track was the proximate cause of the injury.   p. 619.

17. MASTER AND SERVANT.—*Injuries to Servant.—Proximate Cause.*—A railroad company is reasonably bound to anticipate that a narrow strip of track, unballasted and rough, with isolated depressions in it, in a track generally ballasted and safe, in a place where trainmen are required to be on the ground switching and coupling and uncoupling cars, may probably result in injury to any such employe who is required to go upon the track in the performance of his duty.   p. 620.

18. MASTER AND SERVANT.—*Injuries to Servant.—Proximate Cause.*—In order to render the negligence of a master in permitting the existence of defects about the servant's place of work the proximate cause of an injury resulting therefrom, it is not necessary that he should have reason to anticipate the particular kind of accident, but he will be charged with liability if he had reason to expect the occurrence of an accident of any kind affecting the lives or limbs of his servants because of such defect.   p. 620.

19. MASTER AND SERVANT.—*Injuries to Servant.—Contributory Negligence.—Answers to Interrogatories.*—In a brakeman's ac-

tion for injuries by stepping into a hole while crossing the track in front of a moving car and falling, where the jury's answers to interrogatories showed that plaintiff had been a brakeman switching over the same tracks for three or four years, that he did not look at the track for a distance of ten feet west of a certain frog near the point where he was injured immediately before he slipped and fell, that the car was twenty-five or thirty feet away and was approaching at the rate of four miles an hour, and that plaintiff had no knowledge of the defect in the track, and that in the time he had he could not have seen the condition of the track for a distance of ten feet west of the frog if he had looked, it cannot be said as a matter of law that plaintiff was guilty of contributory negligence in not looking for or seeing the hole in the track.   p. 621.

20.  MASTER AND SERVANT.—*Injuries to Servant.—Contributory Negligence.—Breach of Rules.*—It cannot be said as a matter of law that the act of a brakeman in attempting to cross the track in front of a moving car twenty-five or thirty feet away for the purpose of affecting a coupling of such car to another, without stopping the car, was a violation of rules of the company admonishing him not to go between cars, or expose his arms or body, unless he could do so with absolute safety, warning him not to go between cars in motion, stating that he was not to incur risks from which he could not protect himself by reasonable care, and enjoining him in all cases to take time necessary to do his duty safely, nor can it be said as a matter of law that his act under the circumstances was negligence contributing to the injury as a proximate cause, even if it were violative of such rules.   p. 622.

21.  APPEAL.—*Burden of Showing Error.*—It is incumbent on an appellant to show that harmful error was committed against it.   p. 623.

22.  APPEAL.—*Review.—Harmless Error.—Answers to Interrogatories.*—It is not error to refuse to require the jury to answer certain interrogatories more specifically and without evasion, where, even if they had been answered suitably to appellant, such answers when considered with all the others would not have established facts that would overthrow the general verdict.   p. 623.

23.  MASTER AND SERVANT.—*Injuries to Servant.—Trial.—Instructions.—Burden of Proof.*—In an action by a brakeman for injuries alleged to have been caused by defendant's negligence, an instruction devoted to explaining the issues in which the jury was told that the general denial not only put upon the plaintiff the burden of establishing the negligence of defendant, but that under that pleading defendant had a right to prove con-

tributory negligence on the part of plaintiff and that the burden of proving that fact was on defendant, was not erroneous, but correctly stated the law as far as it purported to do so. p. 623.

24. APPEAL.—*Review.*—*Instructions.*—*Error Cured by Other Instructions.*—Error, if any, in an instruction on the burden of proving contributory negligence, based on the objection that it left the jury to believe the burden of proof could only be discharged by evidence introduced by defendants, was cured where from other instructions on the question the jury could not have done other than understand that the determination of contributory negligence must be based on a preponderance of all the evidence given in the cause. p. 624.

25. APPEAL.—*Review.*—*Instructions.*—*Error Cured by Other Instructions.*—Where an instruction in a personal injury case, stated that if the jury found for plaintiff it would be its duty "to assess the amount of damages, which in your judgment he should recover", the objection that it left the amount of the damages to the judgment of the jury without regard to the evidence was cured by other instructions by which the jury was told that its judgment on that question must be based on the evidence given in the cause. p. 624.

26. APPEAL.—*Review.*—*Instructions.*—Instructions must be considered as a whole. p. 624.

27. MASTER AND SERVANT.—*Injuries to Servant.*—*Trial.*—*Instructions.*—In an action by a brakeman against two railroad companies for personal injuries, where, under the allegations of the complaint, the question of whether one, or the other, or both of defendants were under a legal duty to plaintiff with respect to the place where the accident occurred, was a question of fact for the jury, an instruction stating the issues, and which merely left that question to the jury, was not objectionable as leaving to the jury a question of law. p. 625.

28. MASTER AND SERVANT.—*Injuries to Servant.*—*Trial.*—*Instructions.*—*Assumption of Risk.*—In an action by a railroad brakeman for personal injuries caused by the defective condition of the track on which he was working, an instruction stating the issues and telling the jury that if it found that the defendants or either of them was guilty of negligence as charged in the complaint, that plaintiff was free from fault, and that the other material averments of the complaint had been proven, it would be its duty to find for the plaintiff, was not erroneous as omitting the element of assumed risk, since the negativing of plaintiff's assumption of the risk was one of the material allegations of the complaint. p. 625.

29. MASTER AND SERVANT.—*Injuries to Servant.*—*Complaint.*—*Assumption of Risk.*—Negativing the assumption of risk is a mate-

rial allegation in a complaint by a servant against his master for damages for personal injuries. p. 625.

30. APPEAL.—*Review.—Refusal of Peremptory Instruction.—*A peremptory instruction to find for defendant was properly refused where there was evidence to support a verdict for plaintiff. p. 626.

31. APPEAL.—*Review.—Harmless Error.—Refusal of Instructions.* —There was no error in refusing requested instructions that were fully covered by others given. p. 626.

32. APPEAL.—*Briefs.—Abstract Propositions of Law.—Questions Presented.—*The statement in appellant's brief under "propositions or points" of a number of abstract propositions of law bearing some relation to numerous questions involved, without applying any particular one of the many assigned as cause for new trial, is not a compliance with clause 5, Rule 22 of the Supreme Court, and presents no question. p. 626.

From Wabash Circuit Court; *Charles A. Cole,* Judge.

Action by Clark W. Dinius against the Chicago and Erie Railroad Company and another. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*W. O. Johnson, C. R. Lucas, Walter G. Todd, U. Z. Wiley, A. H. Jones, Charles A. Schmettan, Guenther & Clark, Clarence Brown* and *Warren G. Sayre,* for appellants.

*W. A. Branyan, F. O. Switzer* and *U. S. Lesh,* for appellee.

Cox, J.—Appellee recovered a judgment in this action against both appellants for injuries sustained by him while performing the duties of brakeman in the service of appellant, Chicago and Erie Railroad Company, on a track jointly used by it and appellant, Toledo, St. Louis and Western Railroad Company. In the trial below, the record shows these railroads were, for the sake of brevity, designated respectively as the "Erie," and the "Clover Leaf," and will be so termed in the consideration of this appeal. Appellants suffered a defeat in a former trial and appealed to this court from a judgment therein rendered against them, and here the judgment was reversed with instructions to sustain the demurrers of appellants to the complaint. *Chicago, etc., R. Co. v. Dinius* (1908), 170 Ind. 222,

84 N. E. 9. When the cause was remanded appellee filed an amended complaint in two paragraphs and the judgment before us now for review is the result of a trial thereon.

Preliminary to many questions presented for consideration the Clover Leaf railroad company urges a question of jurisdiction. The action was begun in Huntington County 1. against the Erie railroad company alone. Both railroads ran into and had offices in that county. A change of venue was taken by appellee to Wabash County, a territory occupied by the Erie but not by the Clover Leaf. There the latter railroad was made a party and summons was issued to an adjoining county and served upon it there. It not appearing on the face of the complaint, the question of jurisdiction over the person of the Clover Leaf railroad company was raised by plea in abatement to which the appellee addressed a demurrer which was sustained. This action of the court, it is contended, was error. A review of the question is foreclosed. The same question was involved in the former appeal, presented by the record and urged in the brief of the Clover 2. Leaf railroad company. A second appeal brings up for review and decision nothing but the proceedings subsequent to the reversal. Thereafter all questions presented by the first record will be considered as finally determined by the judgment of this court. All such questions not expressly affirmed or reversed, will, by implication, be deemed affirmed. *Dodge* v. *Gaylord* (1876), 53 Ind. 365; *Stevens* v. *Templeton* (1910), 174 Ind. 129, 91 N. E. 563; *Ohio Valley Trust Co.* v. *Wernke* (1912), 179 Ind. 49, 99 N. E. 734. This question, however, seems to have been decided against the contention now made by appellant in *Chicago, etc., R. Co.* v. *Marshall* (1906), 38 Ind. App. 217, 75 N. E. 973.

Demurrers were addressed to each paragraph of the amended complaint by each of the appellants which were overruled by the court. These rulings are the bases of

separate assignments of error. Omitting formal and pre-
liminary averments the first paragraph of this complaint
alleges: "That said roads and lines of said railroad com-
panies intersect and cross each other at Ohio City, in Van
Wert County, in the State of Ohio, and that there is a
switch yard in the east part of said town of Ohio City;
that each of said railroad companies have in said switch
yard a delivery track which delivery tracks parallel the
main line of the Chicago and Erie Railroad Company; that
each of said railroads has a cross-over track running from
their main lines to the delivery track; that in said switch
yard there is also a wye uniting the lines of said railroad
tracks and said delivery tracks; that there was a short
space of track used in common by both of defendant com-
panies in said switch yard on the 4th day of March, 1904,
and continuously prior thereto for three months or more
at the intersection of said wye and the delivery track of
the Chicago and Erie Railroad Company and the delivery
track of the Toledo, St. Louis and Western Railroad Com-
pany, over which space of track as aforesaid both of said
companies must move and did move and bring cars to and
from both of said delivery tracks to the main line
of each railroad company's tracks and to said wye afore-
said; that said companies each carelessly and negligently
neglected to ballast said space of track so used in common
as aforesaid and carelessly and negligently left the space
between the ties in said portion of track open, on the 4th
day of March, 1904, and three months immediately prior
thereto. That each of said companies knowingly left such
space of track so used in common as aforesaid in such con-
dition, that the same was dangerous and unsafe for the
switchmen of each of said companies to work over and along
such portion of track; that it was in said portion of track so
used in common that the plaintiff was hurt and received
the injury as in this paragraph of complaint elsewhere more
fully alleged; that said switch yard on each side of said por-

tion of track so used in common was properly ballasted and made safe for the employes of said companies to work over and along so that there was nothing to warn or lead the employes of said company and this plaintiff to know or suspect that the space of track so used in common was left in the unballasted and dangerous condition aforesaid; that such wye and the delivery tracks and the space of track so used by said railroad companies in common are built upon roadbeds which are upon the lands and property owned by the Chicago and Erie Railroad Company and are constructed with and consist of cross-ties, rails and frogs upon the roadbed, which roadbed was constructed by the Toledo, St. Louis and Western Railroad Company, and such rails, frogs and ties were placed and maintained together with such roadbed by the Toledo, St. Louis and Western Railroad Company, a map fully showing and describing the tracks, switch yards, delivery tracks, wye and said place of road so used in common by said companies at the town of Ohio City is filed herewith and made a part of this paragraph of complaint and marked Exhibit 'A'; that said railroad companies have both for three months prior to the 4th day of March, 1904, and on said date and continuously ever since, jointly occupied, maintained and used said space of track between said wye and said delivery tracks in common by virtue of a lease held by the Toledo, St. Louis and Western Railroad Company from the Chicago and Erie Railroad Company and that during said time said railroad companies have had traffic arrangements by virtue of a written contract existing between them, and were at said date, to wit: on the 4th day of March, 1904, and for a long time prior thereto and since, each switching and operating cars over and along their switches in said Ohio City and over and along said wye and over such space of track hereinbefore described connecting said wye with said delivery tracks; that said traffic arrangements aforesaid were in full force and effect and under actual operation on the 4th day of March, 1904.

Plaintiff further avers that on the 4th day of March, 1904, he was regularly employed in the capacity of a brakeman by the defendant, the Chicago and Erie Railroad Company on one of its freight trains then being operated over its said line from Marion in the State of Ohio, to Huntington in the State of Indiana; that when said freight train arrived at the town of Ohio City in the county of Van Wert in the State of Ohio and while this plaintiff was so employed and was a member of the crew of said freight train, said freight train was run into said switch yard, and it became the duty of this plaintiff as such employe of the said Chicago and Erie Railroad Company and a member of the crew on said train, to make a coupling between two freight cars on the delivery track of the Chicago and Erie Railroad Company, being elsewhere described, which cars to be so coupled were car No. 73,470 which was then standing still on the Chicago and Erie delivery track and a certain Chicago and Eastern Illinois car No. 60,407, the situated west of said Erie car and was being backed up by the employes and agents of the said Chicago and Erie Railroad Company eastward toward the said Erie car No. 73,470; that at said time said Chicago and Eastern Illinois car was being propelled by a locomotive which locomotive was then and there operated by said Chicago and Erie Railroad Company; that at said time a part of the chain on the lever which operated the coupling on the car, being the first car hereinabove mentioned, was absent and by reason thereof such coupling could not be made with the lever thereon and it became an emergent necessity in order to make such coupling to operate the lever on the car backing up, being said latter-named car; that there was a lever on said last described car and which was then backing up on the opposite side of such car from where plaintiff was situated and which lever it was necessary for plaintiff to move in order to effect such coupling and he was thereupon compelled to go to the opposite side of the track from where he was standing to reach such lever;

that at said time said cars and the plaintiff were so situated that the convenient point for plaintiff to cross over the track on which said cars were situated so as to be on the proper side for making such coupling was where the track was owned and used in common by both of the defendant companies for ingress to and egress from their delivery tracks as aforesaid; and that for the purpose of making such coupling the plaintiff thereupon attempted to cross the track so used in common as aforesaid to enable him to be on the right side for the operation of said lever when the car backing up should be near enough to be coupled to said standing car; that in so crossing said track which he then and there attempted to do, he stepped into a hole or opening into the roadbed of said track and between the ties thereof, which opening has hereinbefore been more fully described; that he then and there, while attempting to cross said track, as aforesaid, assumed and believed that the place where he was stepping was a firm and safe footing, that is, that it was the flat surface of the tie, or level and smooth earth between the ties properly ballasted and filled on a level with such ties as it was in other places in the switch yard; that such ties between which his foot went extended from the north side of the Toledo, St. Louis and Western Railroad's delivery track, to the south side of the Chicago and Erie's track and are about 16 feet in length; that where his foot so went into the hole, was on the south side of the north rail of the Toledo, St. Louis and Western delivery track, and north of the north rail of the Chicago and Erie Railroad's delivery track, and about 7 to 9 feet west of the frog, which frog is the first one east of the intersection of the delivery track of the said Toledo, St. Louis and Western Railroad, with the west cross-over track of the Chicago and Erie Railroad; that said hole where his foot went down was at the place hereinbefore described as being the space used in common by both defendants and left unballasted by both defendants and that there was an

absence of ballasting and filling between said ties at said place as aforesaid; that it was not such a place as the proper or ordinary or usual operation of the road required to be left open and was not near any switch but was in a place that should have been properly filled and ballasted with some substance without which such place was dangerous to plaintiff in his line of duty at the time; that there was no support at such place for his foot for a depth of from 6 to 8 inches, and on account of which his foot went into the hole and threw him to the ground, within the rails, and caused portions of his body and limbs to fall into the open space between the crossties, and from the hole in which he fell he was unable to extricate himself until he was caught by the moving car, which at the time was backing up; that he made all effort in his power to escape and get off said track, and he was run over by said car and greatly injured and mangled; that his left hip was dislocated, and the foot of his right leg was cut off near, or in the region of the ankle, by the wheels of the trucks under the said car; that by this injury he suffered great bodily pain and great distress of body and mind and is damaged in the sum of fifteen thousand ($15,000) dollars; that the track at the place he was injured, as aforesaid, and for five feet on each side thereof, was not properly ballasted and filled with gravel or cinders, or other proper substance, and by reason thereof six inches of the crossties below the bottom of the rails was exposed, that there were deep places between the crossties, that such tracks had been in such neglected condition for a long time prior thereto, to wit: three months, and that the defendants, and each of them had knowingly and negligently and carelessly left said place in such condition, and had negligently suffered and permitted said ties and track, at the point where said injury occurred, to wit: said portion of track so used in common as aforesaid, to remain in said condition for a period of three months immediately prior thereto, and up to and

including the 4th day of March, 1904; that defendants knew the hole plaintiff got into existed during the period aforesaid. He avers that it was the duty of the defendants severally and jointly, to keep said roadbed, in said switch yard at the place of plaintiff's injury, filled and ballasted between the said crossties and in a proper and safe condition for their brakemen, and other employes to walk and work over and upon; that at the place he was injured as aforesaid, there was much switching done by both of said defendants in coupling, uncoupling and switching cars, which required the employes of each of the defendants to traverse said place in the line of their duty; that on account of the lack of filling and ballasting of said roadbed at the place where plaintiff was injured, such track was dangerous and unsafe for defendants' employes to work in coupling and uncoupling and switching cars and was wholly the cause of plaintiff's injury; that he was wholly ignorant at all times of the existence of said hole in said roadbed, until he dropped into the same, as aforesaid, and had no knowledge of the fact that the place where he was injured was not properly filled and ballasted between the ties, and was wholly ignorant and without knowledge of the fact at the time he attempted to cross the track and received the injury and at all times prior thereto, that the track, where he was injured was in such condition and was dangerous and unsafe; that the defendants, and each of them, had notice and knowledge of the defective condition, aforesaid, of said track at the point where plaintiff was injured, as hereinbefore described, at the time and continuously for three months prior to the happening of said injury; that at the time of the injury, and prior thereto, he was using due care and caution to avoid injury to himself; that he was entirely free from fault and was not guilty on his part of any negligence whatever; that wholly on account of negligence of the defendants, and each of them, in not providing

a safe place for him to work, and in not having the track at such point, where he fell, properly filled and ballasted between the ties, and in knowingly leaving said hole between the rails, he received the injury aforesaid. Wherefore, he prays judgment for damage against the defendants and each of them, both jointly and severally, in the sum of $15,000 and for costs, and for all other relief proper in the premises."

The second paragraph is not materially different in substance from the first. Section 343 Burns 1908, §338 R. S. 1881, provides that a complaint shall contain, "A statement of the facts constituting the cause of action, in plain and concise language, without repetition." The complaint before us leaves much to be desired as a strict compliance with this admirable provision of the civil code.

In support of its claim that the trial court erred in overruling its demurrers to the complaint, counsel for the Clover Leaf railroad contend that, while leaving holes in track by failing to ballast at the point where appellee was injured might be a violation of the duty it owed to its own employes whose work involved the use of the particular place, yet that the facts averred do not show that it owed any such duty to appellee who was the employe of the Erie railroad. While very clumsily and unsatisfactorily averred we think it may be fairly gathered from the allegations of the complaint in this particular that the track at the point where the alleged defect was and where appellee was injured, was, so far as the use, if not the title, was concerned, the common property of both companies. Its theory is that there was a joint and several control, use and maintenance and, therefore, a joint and several duty a violation of which would work a joint and several liability. It is charged that at this point the tracks were built upon roadbeds which were upon the land of the Erie; that the roadbed and the track thereon were constructed by the Clover Leaf; that it was at a point

where the Clover Leaf track intersected the delivery track of the Erie and on and about which the employes of both companies were compelled to work in the discharge of their duties in switching, each for their own roads, and in interchanging traffic. It would not be material whether one or the other, or both jointly, actually owned the roads, for, without any regard to any contract between these companies as between themselves as to which was to maintain the place in repair, each of them was, as a matter of law, under a legal duty, not only to its employes but to those of the other road who were required to use it, to use ordinary care to keep it in a reasonably safe condition, for it was at a point where the employes of neither road could be, without at the same time being on the roadway of the other. By virtue of the very arrangement by which the two roads occupied with their tracks the same ground or roadbed pursuant to some arrangement between them, the employes of each were by implication, at least, mutually invited to use the place in pursuing their duties, and under such circumstances, the duty of ordinary care to make the place reasonably safe arises. In other words, each company owed to its own employes, required to work at that point, a duty which arose out of the relation of master and servant, and to the employes of the other a like duty because of the invitation. So the charge in the complaint that it was the duty of both appellants jointly and severally to maintain the roadway there in a reasonably safe condition was justified by the facts averred. *Indiana, etc., R. Co.* v. *Barnhart* (1888), 115 Ind. 399, 16 N. E. 121; *Chicago, etc., R. Co.* v. *Vandenberg* (1905), 164 Ind. 470, 73 N. E. 990; *Wisconsin Cent. R. Co.* v. *Ross* (1892), 142 Ill. 9, 34 Am. St. 49; *Denver, etc., R. Co.* v. *Sullivan* (1895), 21 Colo. 302, 41 Pac. 501; *Turner* v. *Boston, etc., R. Co.* (1893), 158 Mass. 261, 33 N. E. 520.

Counsel for the Erie railroad, in support of its claim that the court erred in overruling its demurrers to the

complaint, assert the existence of five defects in that plead-
ing, each of which, it is claimed, is fatal to it as a state-
ment of a cause of action.  It is first contended by
counsel that the defective condition of the track which
was influential in appellee's injury, was not a latent
one, but must be deemed from the facts averred in the
complaint to have been open and obvious and such as the
law charged him with knowledge of, and that therefore,
the general allegations averring want of knowledge are
overthrown and appellee must be held to have assumed the
risk of injury flowing from such defects.  Doubtless this
contention of counsel would have the support of the great
weight of authority if applied to a case where none of the
tracks was ballasted at all for in such case the rule would
apply that the employe assumes the ordinary risks known to
him or which he might know by the use of ordinary care.  But
the complaint before us alleges that the tracks of the switch
yard about and on which the switching was being done,
were "properly ballasted and made safe for the employes of
said companies to work over and along," except at the point
where appellee was injured and for a space of five feet on
each side of it, "so," it is averred, "that there was noth-
ing to warn or lead the employes of said companies and
this plaintiff to know or suspect" the existence of the de-
fective place.  Actual knowledge on the part of appellee
of the unballasted condition of the track at this point is
positively negatived and the question is whether under the
facts knowledge must be imputed to him as a matter of
law.  This may not be done unless it may be said that the
exercise of ordinary care would have shown the defect be-
fore he encountered the danger from it.  The theory of the
complaint seems to be that, in a measure, appellee was
lulled into a sense of safety of footing by the fact that the
tracks generally about which he was working were properly
ballasted; that the discovery of a defect on the coupling
apparatus of the standing car raised an emergency which

required him to cross the track in advance of the slowly moving car and so to effect the coupling of that car to the standing one; that to meet this emergency and make the coupling in the performance of his duty appellee stepped into a hole in the track where it was unballasted. The facts averred sustain this theory and under them it was a question of fact and not of law whether appellee knew of the defects in the track and the danger which might exist in attempting to cross. Manifestly there was little time for deliberation, and with due care to protect himself from being caught by the advancing car, appellee could not slowly and deliberately inspect the placing of every footstep and give no attention to the car. A due regard at once for his safety and the performance of his duty under these circumstances might well divide the exercise of his faculties and it cannot be said as a matter of law that he must have seen the defective condition of the track before or when he entered upon it and that he voluntarily encountered the risk. There can scarcely be a difference in reason and principle relative to the application of the doctrine of the assumption of risk between the facts of this case and those in *Grand Trunk, etc., R. Co.* v. *Poole* (1911), 175 Ind. 567, 93 N. E. 26. In that case it appeared from the allegations of the complaint that it was the general custom of the defendant railroad company to block the frogs of its railroad and this the plaintiff, a brakeman in its employ, knew. While walking in front of a moving car attempting to adjust a defective coupling with which to couple the moving car to a standing car, he failed to see an unblocked frog, of which he did not have previous knowledge, his foot caught therein and while trying to extricate it he was struck by the moving car and run over. It was held that these allegations were abundantly sufficient to repel any claim that the accident was the result of an assumed risk. What has been said, and the case just cited, also disposes adversely to appellant of the claim of

6.

counsel that the complaint in this case shows that appellee was guilty of contributory negligence in attempting to cross the track in front of the slowly moving car.

The next objection to the complaint is that, it is claimed, the risk from unballasted tracks being necessarily incident to the employment of a trainman required by his duty to work about them, and assumed by him as such, no duty flowing from the employer to the employe to ballast them exists and a failure to ballast is, therefore, not an actionable breach of duty.   The decisions of courts are not harmonious on the duty of railroads to ballast the tracks and places about which employes are required to work in coupling and switching cars but we need not enter into a consideration of that question in this case, for here the complaint avers the tracks were properly ballasted and made safe for those obliged to work about them with the exception of the section of track about ten feet in extent, where appellee was hurt and where it might have been ballasted, which it is alleged appellants had knowingly permitted to remain in a defective and unsafe condition for three months before the accident.   The theory of the complaint, as we have seen, was that a sense of safety was induced by general ballasting of the track and that a defect existed which was in the nature of a pitfall.   This, it can scarcely be denied, was a violation of duty.   The duty to use ordinary care to provide a reasonably safe place in which to work is so elementary that the assertion of it is trite and commonplace.   The implied contract of the employer is that he will not expose the employe to danger which is not fairly incident to and within the ordinary risks of the service.   It is, therefore, a violation of duty and negligent to subject a servant to a risk not ordinarily incident to the employment, unless the extraordinary hazard be obvious to him, or he be apprised of it in some manner.   3 Labatt, Master and Servant (2d ed.) §§956, 957.   As said in the work just cited in

§968 which embraces a discussion of the question of the duty to ballast tracks, "it would doubtless be held everywhere that negligence may be inferred from the existence of an isolated hole between the ties, even in a side track. This would clearly constitute a pitfall." See, also, as bearing on this question, *Pennsylvania Co.* v. *Brush* (1891), 130 Ind. 347, 28 N. E. 615; *Lake Erie, etc., R. Co.* v. *Mugg* (1892), 132 Ind. 168, 31 N. E. 564; *Indiana, etc., R. Co.* v. *Bundy* (1899), 152 Ind. 590, 53 N. E. 175; *Louisville, etc., R. Co.* v. *Kemper* (1899), 153 Ind. 618, 53 N. E. 931; *Evansville, etc., R. Co.* v. *Doan* (1892), 3 Ind. App. 453, 29 N. E. 940; *Cleveland, etc., R. Co.* v. *Sloan* (1894), 11 Ind. App. 401, 39 N. E. 174; *Pittsburgh, etc., R. Co.* v. *Elwood* (1900), 25 Ind. App. 671, 58 N. E. 866; *Baltimore, etc., R. Co.* v. *Keiser* (1912), 51 Ind. App. 58, 94 N. E. 330, and cases there cited; *Missouri Pac. R. Co.* v. *Jones* (1889), 75 Tex. 151, 12 S. W. 972, 16 Am. St. 879; *Illinois Cent. R. Co.* v. *Sanders* (1897), 166 Ill. 270, 46 N. E. 799; *Illinois Cent. R. Co.* v. *Cozby* (1898), 174 Ill. 109, 50 N. E. 1011; *Wibel* v. *Illinois Cent. R. Co.* (1910), 155 Ill. App. 349; *Preston* v. *Central R., etc., Co.* (1889), 84 Ga. 588, 11 S. E. 143; *St. Louis, etc., R. Co.* v. *Robbins* (1893), 57 Ark. 377, 21 S. W. 886; 1 Bailey, Personal Injuries (2d ed.) §132.

In *Pittsburgh, etc., R. Co.* v. *Elwood, supra,* it was held that leaving rubbish, such as piles of cinders, etc., on the track of a switch yard between the rails was a violation of the duty which the company owes to a yard brakeman to provide a safe place to work. In the opinion of the court it was said: "It is certainly negligence for a railroad company to allow rubbish, such as described in the complaint, to accumulate on its tracks and in its yards, and to suffer it to remain there. Especially is this true in a switching yard where the employes are required to go and be in the discharge of their duties in coupling and uncoupling cars, making up trains," etc. In the case of *Illinois Cent. R. Co.* v. *Cozby, supra,* the condition of the track was very much like

that in this case. In the opinion of the court it was said: "The theory of plaintiff on the trial was that the spaces between the ties for eight or ten feet north of the 'heels' of the 'switch points,' where there were no 'bridles' and where there was no excuse for leaving them open, were negligently left unfilled; that deceased, while in the discharge of his duty in attempting to uncouple the train, came to his death by stepping into one of these unfilled spaces, in consequence of which his foot was caught under the rails, and being unable to remove his foot he was run over and killed. If this theory was the correct one (and there was evidence to support it) then the negligence of the railroad company was established."

In that part of the points and authorities in their brief which is addressed to the court's action in overruling the demurrers to the complaint counsel state and support by citation of authority that "a complaint based on negligence is demurrable for want of facts, if it does not affirmatively appear from the facts pleaded that the negligence charged was the proximate cause of the injury." Counsel do not attempt to apply this to the complaint, or point out wherein the facts pleaded fail to show that the hole into which appellee stepped was not the proximate cause of his injury. The contrary is quite palpable. It is not claimed by counsel that in this particular the effect of this complaint is to be controlled by the former decision and manifestly it is not.

As a final objection to the complaint it is alleged that the complaint is an amended complaint filed more than two years after the accident; that it introduces a new cause of action and a different one from that stated in the original complaint, upon which the cause was first tried. This being true, it is contended, the complaint showed on its face that the cause of action set up was barred by the two years' statute of limitations and was therefore subject to demurrer for want of facts. The objec-

tion is without merit and wholly unsustained by our decisions. It is not apparent on the face of the complaint that the cause of action was barred. Nor was a new cause of action stated. The case before us clearly comes within the rule that where an amendment to a complaint sets up no new matter or claim, but merely amplifies and restates with more certainty, or in a different form, the cause of action set out in the original pleading, it relates back to the commencement of the suit, and the statute of limitations is arrested at that point. *Cleveland, etc., R. Co.* v. *Berg-schicker* (1904), 162 Ind. 108, 69 N. E. 1000; *Chicago, etc., R. Co.* v. *Bills* (1888), 118 Ind. 221, 20 N. E. 775; *Indianapolis St. R. Co.* v. *Fearnaught* (1907), 40 Ind. App. 333, 82 N. E. 102; *Raley* v. *Evansville Gas, etc., Co.* (1910), 45 Ind. App. 649, 90 N. E. 783, 91 N. E. 571; *Fort Wayne Iron, etc., Co.* v. *Parsell* (1912), 49 Ind. App. 565, 94 N. E. 770; 25 Cyc. 1305. The case last cited is cited in appellant's brief to sustain the contention that a new cause of action is averred in the amended complaint. It does not sustain the contention but is clearly adverse to it.

With the general verdict in favor of appellee the jury returned answers to interrogatories. Each of appellants unsuccessfully moved for judgment on the facts so found. It is insisted with much earnestness that the court erred in denying these motions. This contention is based on the claim that the answers show that appellants violated no duty which they owed to appellee, that appellee was guilty of contributory negligence and that he assumed the risk of whatever danger might arise in his service from the unballasted space of track. We have shown that the facts averred in the complaint established a theory upon which the law warranted a recovery by appellee if such facts were proved. The general verdict necessarily found the

12. existence of all facts essential to a recovery on this complaint. It found that there was the violation of duty alleged, that appellee was not guilty of culpable

negligence which contributed to his injury and that he did not assume the risk of danger of injury from the defective strip of track.   Counsel therefore are charged with the task of showing that the answers to interrogatories present a positive and irreconcilable contradiction of some one of these essential facts, or the general verdict must stand.   In considering whether such a conflict exists, as counsel contend, it would be profitless to review the 93 interrogatories answered by the jury. On the question of violation of duty, or of negligence on the part of appellants, the answers instead of being in conflict with the general verdict rather harmonize with and support it when considered in the light of the law which we have determined is applicable to the complaint.   They show, among other facts which support the theory of the complaint, that the delivery tracks when first laid were ballasted with cinders the whole length; that afterwards the Clover Leaf removed the rails and ties of the Erie from the frog to the point of the switch to the west; that when this was done they only ballasted slightly and it settled, and in December before appellee was hurt in March, they reballasted slightly and raised one side of the track; that appellee was injured at a point from 6 to 9 feet west of the frog; that the track was not in a uniform condition for a distance of 10 feet west from the frog.   And this is also true on the question of the assumption of risk. Counsel's position on these questions seems to be based on the assumption, as it was on the question of the sufficiency of the complaint, that the tracks generally were not ballasted and that the condition where appellee was hurt was not substantially different from the surroundings.   This, as has been shown, was not the theory of the complaint.   The facts specially found are not antagonistic to the theory of the complaint but support it more or less in every essential particular.   But counsel insist that as on the former appeal the complaint averred that appellee "stepped upon

the end of one of the crossties; that his foot slipped off of the tie and into a low place between the crossties," etc., and it was held "that the slipping of appellee's foot from the crosstie upon which he had stepped" was the proximate cause of his injury and not the defect in the roadbed; that this is the law of the case and now prevents a recovery upon identical facts, which, it is asserted, are found by the answers. Doubt may well be asserted of the correctness of the former decision. *Balzer* v. *Waring* (1911), 176 Ind. 585, 95 N. E. 257; *King* v. *Inland Steel Co.* (1912), 177 Ind. 201, 96 N. E. 337, 97 N. E. 529. But even if that decision was wrong and subsequently impliedly overruled by other cases it must still remain the law throughout all the subsequent stages of the case on identical facts whether the question arises in the same manner. 2 Ency. Pl. and Pr. 379; *Phenix Ins. Co.* v. *Pickel* (1892), 3 Ind. App. 332, 336, 29 N. E. 432; *Brunson* v. *Henry* (1898), 152 Ind. 310, 52 N. E. 47; *Board, etc.* v. *Bonebrake* (1896), 146 Ind. 311, 45 N. E. 470; *Barrett* v. *State* (1911), 175 Ind. 112, 93 N. E. 543. If, therefore, the answers to interrogatories establish facts identical with those averred in the former complaint in relation to the proximate cause of appellee's injury they, unless modified or changed by other facts found, preclude a recovery under the law as declared in the former decision. The answers before us state the thing that happened to appellee variously.

They establish the fact that, in going across the track, appellee stepped on the edge of a tie near the end, and the unballasted track at that point caused his foot to slip into the hole and that "such stepping into such hole caused him to fall to the ground" where he was struck by the moving car and injured; that the approaching car was 25 or 30 feet away when he started to cross the track and he would have had time to cross safely "before the car struck him if he had not stepped into the hole and fallen." It will be seen from an examination of the former

opinion that, in applying the law to the facts averred in the former complaint, the writer of the opinion construed the averments to mean that in no sense did appellee step into the hole, but that he so stepped upon the tie that his foot rested wholly thereon, and that thereupon through some movement of his own, or cause unaffected by the defect in the track, his foot slipped "from the crosstie upon which he had stepped." And, indeed, this construction may be the purport of those allegations, for they are that appellee "stepped upon the end of one of the crossties" and "that his foot slipped off of it." But the answers before us show a different state of facts which positively establish a direct causal connection between appellee's injury and the defective track. They clearly import, particularly when considered in connection with their relation to the general verdict, that when he stepped only the side of his foot found lodgment on the edge of the tie so that it was largely unsupported and must necessarily slip into the hole. It was none the less a stepping into the hole because his foot struck the edge of the tie first. This, manifestly, puts the facts in entire harmony with the complaint. This, naturally, under the circumstances produced the fall and his injury followed by natural and unbroken sequence of events.

17. While appellants might not, perhaps, be bound to anticipate just the combination of circumstances here existing, yet they were reasonably bound to anticipate that a narrow strip of track, unballasted and rough, with isolated depressions in it, in a track generally ballasted and safe, in a place where trainmen were required to be on the ground switching and coupling and uncoupling cars, might probably cause an injury to some employe under circumstances not unlike these. As said in *Louisville,*

18. *etc., R. Co.* v. *Kemper, supra* 624, "It is not necessary that the master should have reason to anticipate a particular kind of accident, but the inquiry is, had he reason to expect the occurrence of an accident of any kind

affecting the lives or limbs of his servants at that place, and because of this defect in the road?'' On the former appeal the law was not declared on the same facts as we now have before us and the decision then made does not control this appeal. *Buehner Chair Co.* v. *Feulner* (1905), 164 Ind. 368, 73 N. E. 816.

There is no merit in appellants' contention that the answers show affirmatively that appellee was guilty of contributory negligence. It is founded largely on the fact that the answers show that appellee had been in the employ of appellant, Erie railroad, for three or four years as a brakeman and had frequently assisted other members of train crews in switching over the tracks involved in this case; and upon the further fact that one answer was to the effect that appellee did not look at the track for a distance of 10 feet west of the frog in question immediately before he slipped and fell. It is claimed that from the facts thus shown the law imputes to him knowledge of the defect in the roadway and that by attempting to cross the track in front of an approaching car then 25 or 30 feet away and moving, as the answers show, four miles an hour, or more than five feet per second he was, as a matter of law, guilty of contributory negligence. As against the general verdict the fact of his prior service is obviously not sufficient to charge appellee with knowledge of the particular defect which caused his injury. Moreover the answers themselves explicitly state that appellee did not know of the open places between the ties where he fell before the accident and that he could not, in the time he had, have seen the condition of the track for a distance of 10 feet west of the frog at and immediately before he slipped and fell if he had looked; that immediately prior to his attempting to cross the track he could not, in the time he had, have seen the depression into which his foot slipped. We cannot say that, as a matter of law, he was bound in the exercise of due care for his safety to keep

his eyes on the track or watch the placing of every footstep, for, doubtless, reasonable care required him to give some attention to the approaching car.

The jury in answer to certain of the interrogatories found that at the time of the accident there were certain rules of appellant Erie railroad in force which appellee was familiar with and had agreed to abide by. By one of these rules he was admonished that under no circumstances, should he go between cars, or expose his arms or body, unless he could do so with absolute safety. By another he was advised not to go between cars in motion, and was warned to avoid such danger, and that a violation thereof, would be at his peril. By another rule he was told that it was the desire of the company, that he should not "incur risks from which he could not protect himself by reasonable care," and he was enjoined, "in all cases," to take time necessary to do his duty safely. It is claimed that under these rules the exercise of due care required appellee to stop the advancing car before attempting to cross the track. It cannot be said as a matter of law that appellee violated the rules by not stopping the car, or, if he did, that it was, under all the circumstances, negligence which contributed to his injury as a proximate cause. 3 Labatt, Master and Servant (2d ed.) §§1237, 1238; *Flutter* v. *New York, etc., R. Co.* (1901), 27 Ind. App. 511, 59 N. E. 337; *Diamond Block Coal Co.* v. *Cuthbertson* (1906), 166 Ind. 290, 76 N. E. 1060. These were questions of fact for the jury and decided adversely to appellants by the general verdict, and the answers show no conflict therewith.

Among the causes assigned for a new trial appellant, Erie railroad, argues at length that the evidence is not sufficient to sustain the verdict, and that the verdict is contrary to law. The evidence sustains the complaint in every essential averment on the theory on which a recovery is sought and what has been said in discussing its sufficiency

and the merits of the motions for judgments on the answers to interrogatories must serve to determine against this appellant the claim that the evidence is not sufficient.

One of the causes for a new trial assigned by the Erie railroad was that the court erred in refusing to require the jury to answer "more specifically and without evasion" interrogatories Nos. 15, 31, 55 and 82. Complaint is made of this ruling. The first one was answered: "It was not so proven," and the others, "In the time he had, no." Counsel content themselves with an assertion that there was evidence which would have compelled the jury to answer these interrogatories "yes" which would have been favorable to the defense. They wholly fail to point out where, in the record, such evidence is to be found. It is incumbent on an appellent to show that harmful error was committed against him. *Cincinnati, etc., R. Co.* v. *Cregor* (1898), 150 Ind. 625, 50 N. E. 760; *City of Indianapolis* v. *Keeley* (1906), 167 Ind. 516, 523, 79 N. E. 499. Appellants could not have been harmed in the absence of evidence which would have required the answer desired. Moreover if all these interrogatories had been answered according to appellants' desire such answers when considered with all the others would not have established facts which would overthrow the general verdict, and in such case the rule is that it is not error to overrule such a motion as this. *Chicago, etc., R. Co.* v. *Hedges* (1885), 105 Ind. 398, 7 N. E. 801; *Indianapolis, etc., R. Co.* v. *Stout* (1876), 53 Ind. 143; *City of Indianapolis* v. *Keeley, supra.*

The giving of a number of instructions claimed to be erroneous is assigned as cause for a new trial and relied on for reversal by the Erie railroad company. Complaint is first made of instruction No. 5 given by the court on its own motion. This instruction was one of those devoted to explaining the issues. In it the court told the jury that the general denials of the appel-

lants not only put upon appellee the burden of establishing the negligence of appellants, but that under that pleading appellants had the right to prove contributory negligence on the part of appellee and that the burden of proving that fact was on appellants. It is contended that the instruction left the jury to believe that the burden of proof could only be discharged by evidence introduced by appellants when in fact it could be by a preponderance of all the evidence given in the cause, by appellee as well as by appellants. This instruction was not erroneous. It baldly and correctly stated the law as far as it purported to do so. The cases cited by counsel to sustain their contention are either not applicable or have been disapproved. *Newcastle Bridge Co.* v. *Doty* (1906), 168 Ind. 259, 267, 270, 79 N. E. 485. Moreover in other instructions given, many of which were given at the request of appellants and some of them more favorable to appellants than the law under the facts warranted, the question of appellee's contributory negligence was put to the jury in almost every conceivable form; and the jury could not have done other than understand from them that its determination of the question whether appellee was guilty of contributory negligence must be based on a preponderance of all the evidence given in the cause. If there had been error in the particular claimed, instruction No. 5 given at the request of the Erie railroad would have served to cure the error. *Town of Winamac* v. *Stout* (1905), 165 Ind. 365, 367, 75 N. E. 158, 75 N. E. 651.

Instruction No. 12 given by the court on its own motion is assailed because it stated that if the jury found for the plaintiff, "it will be your duty to assess the amount of damages, which in your judgment he should recover. The objection to the instruction is that it left the amount of the damages to the judgment of the jury without regard to the evidence. If the instruction stood alone on this question, it would, of course,

be radically erroneous. But it does not, and instructions must be considered as a whole. The defect in or incompleteness of instruction No. 12 was cured by instruction No. 15 of the court's instructions and No. 14 given at the request of appellee in which the jury was clearly given to understand that its judgment upon this question must be based on the evidence given in the cause.

Instruction No. 1 given by the court upon the request of appellee is not subject to the objections of appellants that it leaves to the jury a question of law. It merely left to the jury, whether one, or the other, or both of appellants were under a legal duty to appellee with respect to the particular place where the accident occurred. Under the allegations of the complaint this clearly was a question of fact which the jury must decide. It is also charged that this instruction omitted the element of assumption of risk and was for that reason bad. The instruction was one stating the issues and in it the jury was told that if it found that the defendants or either of them was guilty of negligence as charged in the complaint, that appellee was himself free from fault and that the other material averments of the complaint had been proven, it would then be the duty of the jury to find for the plaintiff against such defendant or defendants as it might determine in the manner aforesaid was responsible. Negativing assumption of risk is a material allegation of a complaint in such an action as this and it cannot be said that this instruction omitted that material element in the case. *Cleveland, etc., R. Co.* v. *Gossett* (1909), 172 Ind. 525, 531, 87 N. E. 723.

What has just been said applies with equal force to one objection made to instruction No. 11 given by the court at appellee's request. Another objection to this instruction is that it presented the case of appellee on the question of how his injury was received, upon a theory different

from that of the complaint. The objection is not merito-
rious. The precise question was determined in consider-
ing appellants' motions for judgment on the answers to
interrogatories. Notwithstanding the fact, as shown by
the evidence, that appellee's foot first struck the edge of a
tie, he nevertheless stepped into the hole. What has been
said above with reference to the court's instruction No. 5
disposes of a like objection to instruction No. 12 given at
the appellee's request. Appellant, Erie railroad, also argues
against instruction No. 7 given at the request of appellee,
but directs no proposition or point specifically to it. Coun-
sel for appellant, Erie railroad, also attempt to make
a showing of reversible error on the refusal of certain
instructions requested by it. The first one was a
peremptory instruction to find for it. Manifestly
there was no error in refusing this. There was no
error in rejecting this appellant's instruction No. 3, for
it was in all essentials covered by instruction No. 4 offered
by the same appellant which was given, and others.

What has been said in discussing other questions raised
in the case show inherent defects in this appellant's instruc-
tions No. 6, 9, 13, 14 and 17, or that they were covered in
substance by others given, and the court did not err in
rejecting them.

The brief of appellant, Clover Leaf railroad, in that part
of it devoted to "a concise statement of so much of the
record as fully presents every error and exception
relied on," as provided by clause 5, Rule 22 of this
court, shows that its motion for a new trial stated
73 causes. In that part of its brief devoted to "proposi-
tions or points" under the heading relating to error in
overruling this appellant's motion for a new trial, 13
abstract legal propositions are stated which bear some rela-
tion to the numerous questions involved in the case, but no
attempt is made to apply any particular one of the many
assigned as cause for a new trial except that of overruling

this appellant's motion for judgment on the answers to interrogatories which has been given consideration. This is not a compliance with clause 5, Rule 22, *supra*. "Mere abstract statements of law or fact, or both, unless applied specifically to some particular ruling or action of the court, although contained in appellant's statement of points, present no question." *Leach* v. *State* (1912), 177 Ind. 234, 97 N. E. 792. See, also, *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438, 78 N. E. 1033; *Inland Steel Co.* v. *Smith* (1907), 168 Ind. 245, 80 N. E. 538; *Weidenheimer* v. *State* (1914), 181 Ind. ——, 103 N. E. 413, 104 N. E. 577, and cases there cited. No particular error or exception arising from this action of the court, other than that above noted, is therefore presented.

Having given extended consideration to all errors assigned and not waived and finding no material error in the record, the judgment is affirmed.

NOTE.—Reported in 103 N. E. 652. See, also, under (1) 3 Cyc. 401; (2) 3 Cyc. 395; (3) 33 Cyc. 730; (4) 26 Cyc. 1112; 33 Cyc. 726; (5) 26 Cyc. 1398; (6) 26 Cyc. 1399; (7) 26 Cyc. 1446, 1447; (8) 26 Cyc. 1097; (9) 26 Cyc. 1165; (10) 26 Cyc. 1389; (11) 25 Cyc. 1305; (12) 38 Cyc. 1869; (13) 38 Cyc. 1929; (14) 38 Cyc. 1927; (15) 3 Cyc. 397; (16) 26 Cyc. 1513; (17) 26 Cyc. 1092; (19) 26 Cyc. 1482; (20) 26 Cyc. 1269; (21) 3 Cyc. 275, 387; (22) 3 Cyc. 383; 38 Cyc. 1921; (23) 26 Cyc. 1495; (24) 38 Cyc. 1782; (26) 38 Cyc. 1778; (27) 38 Cyc. 1511; (28) 26 Cyc. 1494, 1503; (29) 26 Cyc. 1397; (30) 38 Cyc. 1532, 1567; (31) 38 Cyc. 1711; (32) 2 Cyc. 1013. As to duty of employer to furnish safe place to work, see 97 Am. St. 884. As to doctrine of proximate cause, see 36 Am. St. 807. As to a railroad company's liability to servants where two or more railway companies use same tracks or station grounds, see 46 L. R. A. 102. On the liability of railroad lessee or licensee to its servants for condition of track, see 6 L. R. A. (N. S.) 787.