HOGLE v. RELIANCE MANUFACTURING COMPANY.

[No. 16,952. Filed April 30, 1943. Rehearing denied May 25, 1943. Transfer denied June 22, 1943.]

490

*McDonald & McDonald,* of Princeton, and *Theodore P. Meade,* of Washington, for appellant.

*Ortmeyer, Bamberger & Ortmeyer,* of Evansville, for appellee.

ROYSE, J.—This action originated in the Daviess Circuit Court where, on February 25, 1938, appellant brought his complaint against appellee and others for damages. The venue was thereafter changed to the Dubois Circuit Court. After such change was completed and more than two years after the action accrued, appellant filed an amended complaint in three paragraphs. Appellee demurred to each paragraph of appellant's amended complaint, and the trial court sustained such demurrers. Appellant refused to plead further. The court entered judgment that appellant take nothing and that appellee recover its costs.

The only error assigned here is the ruling of the trial court on the demurrers.

The original complaint alleged, in substance, that

appellee was a corporation of the State of Indiana engaged in the manufacture of clothing and garments, and operated a plant in Washington, Daviess County, in said State; that in the fall of 1937 appellee and its employees were engaged in a labor dispute, as a result of which the company closed down its factory, and a large number of employees engaged in a strike and picketed the place of business of said company; that appellee had in its employ a co-defendant, Deskin M. Pasley, who was the superintendent in charge of the operation of said factory, and who undertook to load out the goods manufactured by said defendant and stored in the warehouse of said defendant; that the employees of said defendant protested said action and picketed said warehouse; that during all of said time the defendant Fitzgerald was the duly elected, qualified and acting Sheriff of said Daviess County; that the defendants, Reliance Manufacturing Company and Pasley, requested and procured from said defendant Fitzgerald the appointment of thirty-five persons who were appointed and deputized to act as deputy sheriffs of said county, including the defendant Shaw; that these persons went upon the grounds, premises and warehouse of defendant company to guard and protect the property of said defendant, and to assist the company in the loading and removal of the goods, wares, merchandise and chattels of said defendant Company; that said premises and property were not at said time nor was any part of them at any of the times herein mentioned in the custody of the law; that for the performance and discharge of the acts and duties assigned to and requested of said agents, sheriff and deputy sheriffs, the defendants Reliance Manufacturing Company and Fitzgerald armed said men or deputies with firearms, tear-gas guns, ammunition, gas projectiles

and missiles; that on the 16th day of November, 1937 this appellant was in a group of picketers and sympathizers of the employees of said company, and that at about the noon hour he was sitting on a rail of a railroad switch track near, but not upon, the premises of said defendant company, and that he started to rise to go away from said premises and as he was turning to leave the defendant Shaw came out of said warehouse onto the platform thereof and fired one of the tear-gas guns so furnished, as aforesaid, into the crowd of workers, picketers and sympathizers so assembled off of the premises of said defendant Company; that the tear-gas projectile or bomb so discharged therefrom struck the appellant in the back of his head, penetrating his skull and exploded therein, thereby fracturing his skull and destroying the brain tissue so that a portion of appellant's brain oozed therefrom; that he was thereby rendered unconscious; that as a result of the injuries received by appellant he was confined in the hospital for more than three weeks and his entire nervous system was subjected to great shock; that a portion of his skull was necessarily removed, and that by reason of said condition his ability to work and labor has been greatly impaired; that prior to the injury complained of he was a strong ablebodied man, earning and capable of earning as a truck driver and laborer the sum of five dollars a day; that since said injuries he has been unable to perform such labor; that he is uneducated and not qualified to perform any other labor or engage in any other occupation; that he is married, has two children, a boy of nine years and a girl of four years, and has no other means of supporting himself and family except by his manual labor; that by reason of said injuries he has become liable for large amounts for

medical care, nursing and hospital expense in the total amount of $500.

In the second paragraph of original complaint it is alleged the defendants entered into a conspiracy to intimidate such employees from lawfully and peaceably picketing said premises; that in the furtherance of said conspiracy the defendant Shaw did the acts alleged in the first paragraph of complaint.

To this complaint appellee filed its answer in general denial after the venue had been changed from the Daviess Circuit Court to the Dubois Circuit Court. On January 2, 1940 appellant filed his amended complaint in three paragraphs in the Dubois Circuit Court. The first paragraph of amended complaint is as follows:

"The plaintiff for his first paragraph of amended complaint, complains of said defendants, and each of them, and says that said defendant Reliance Manufacturing Company is a corporation of the State of Indiana and at all times herein mentioned has been engaged in the business of owning and operating manufacturing plants for the manufacture of clothing and garments and in connection with its said business owns and operates a garment manufacturing plant in the City of Washington in the State of Indiana and a shipping plant and warehouse situate in Daviess County in the State of Indiana, immediately outside the corporate limits of the city of Washington;

"Plaintiff says further that on, towit, the 15th day of November, 1937, and at all times herein mentioned, the defendant Deskin M. Pasley, was then and there the superintendent of said defendant company in charge of the operation of its said factory and ware-house, and managed, directed and controlled, for and in behalf of said defendant Reliance Manufacturing Company, all of its property, operations and business in Daviess County, Indiana.

"That on the 16th day of November, 1937, said defendants, Reliance Manufacturing Company and

Deskin M. Pasley requested and directed said defendant Fitzgerald to select and procure some thirty-five other persons, including said defendant . Shaw, to, and they did, on the morning of November 17, 1937, go upon the grounds and premises, and into said ware-house of said defendant Company, for and in its behalf as its agents and servants, in pursuance of a common purpose and design, to guard and protect the property and employes of said defendant company, to keep other persons from entering thereon, and assist in the loading and removal of certain goods, ware, merchandise and chattels of said defendant Company from said ware-house and from said County; that said premises and property, were not, at said time, nor was any part of them, at any time herein mentioned, in the custody of the law; that for the performance and discharge of the acts and duties assigned to and requested of said agents, sheriff and deputy sheriffs, said defendants Reliance Manufacturing Company and Fitzgerald took onto said company's said premises a supply of tear-gas guns, ammunition, gas projectiles and missles; and placed the same in the care and custody of said defendant Shaw and instructed him how and when to use the same; in the course of his duties and employment and in the discharge of said common purpose and design aforesaid;

"That on said 16th day of November, 1937, this plaintiff at about the noon hour was sitting with a group of other persons on the rail of a railroad switch track near, but not upon, the premises of said defendant Company and started to rise to go away from said premises; that as he arose, and was turning to leave, said defendant Shaw, acting for and in behalf of his co-defendants, and each of them, and believing that their common purpose of guarding and protecting the property and employes of said defendant and of preventing other persons from entering upon said premises of the defendant Reliance Manufacturing Company could be best served thereby, came out of said warehouse, onto the platform thereof, and wantonly and recklessly and in utter disregard of the life, limb and safety of all such assembled persons, including this plaintiff, fired one of the tear-gas guns so fur-

nished him, as aforesaid, into the group of persons so assembled off the premises of said defendant company, and the tear-gas projectile so discharged therefrom, struck this plaintiff in the back of his head, penetrating his skull and exploded therein, thereby fracturing the skull of this plaintiff and destroying the brain tissue so that a portion of the brain of plaintiff oozed therefrom; that plaintiff was thereby rendered unconscious and the gas contained in said bomb was thereby released so that it was impossible for sometime for persons to get to the plaintiff to render him first aid; that as a result of said injuries said plaintiff was confined to the hospital for more than three weeks, during a part of which time he was wild, delerious and raving and his entire nervous system was subjected to great shock to such an extent that his mental faculties and mind have been weakened and impaired and he has been rendered irritable, quarrelsome and irrational; that a portion of his skull was necessarily removed and by reason of said condition plaintiff's ability to work and labor has been greatly impaired; that prior to said injury he was a strong, ablebodied man, earning and capable of earning as a truck driver and laborer the sum of towit, five dollars per day, but since said injuries has been unable to perform such labor; that he is a married man with two children, one a boy of *one* year and a girl of four years and has no other means of supporting himself or his family except by his manual labor; that by reason of his said injuries he has incurred and, become liable for large amounts for medical care, nursing and hospital expenses in the total amount of five hundred dollars; that the injuries which he has sustained are of a permanent and lasting character; that by reason of the premises plaintiff has been damaged in the sum of twenty-five thousand dollars.

"Wherefore, plaintiff prays judgment against said defendants, and each of them, for the sum of twenty-five thousand dollars and for all other just and proper relief."

The second paragraph of amended complaint is identical to that of the first with the exception that the

first charges the act complained of to have been done "wantonly and recklessly and in utter disregard of the life, limb and safety of all such assembled persons, including this plaintiff," while the second charges the act to have been done "carelessly and negligently."

The third paragraph of complaint differs from the first and second in that it charges the defendants, together with a large number of other persons, combined and confederated together for the performance of the acts resulting in the injury complained of. That part of said third paragraph is as follows:

"Plaintiff says further that on, towit, the 15th day of November, 1937, the defendants, together with a large number towit, 25 or 30 other persons, whose names are to the plaintiff unknown, but are to the defendants well-known, agreed, combined and confederated together to guard and protect the premises and property of said defendant company, and its employes engaged in working therein, to assist said Company and its agents and servants in the removal of certain goods wares, chattels and merchandise from said premises, to prevent third persons from entering upon the premises of said defendant company or from in any way interferring with or hindering the removal of said property.

"Plaintiff further avers that on the morning of, towit, the 17th day of November, 1937, in the execution and performance of said agreement, combination and confederation, and pursuant thereto, said defendants and said other persons entered upon the premises of said defendant Company and took with them for use in carrying out the purposes aforesaid, in the event they or any of them deemed the use thereof necessary or advisable, a supply of deadly and dangerous weapons, including fire-arms, two tear-gas guns, tear-gas shells and bombs; that pursuant to their common purpose and design said tear-gas guns and bombs were by said defendants placed in the custody of

said defendant Clare Shaw upon said premises and he was instructed how and when to use the same and was given authority and leave by his co-defendants to use and discharge said guns and shells as in his judgment it seemed necessary or proper; that one of said tear-gas guns when discharged expelled a pointed tubular, metal shell, towit, seven inches in length and one and one-fourth inches in diameter, with great force and velocity sufficient to penetrate the skull of an adult person to the depth of one inch, at a distance of more than one hundred feet and had a firing range of, towit, 300 feet; that said tear-gas gun constituted a dangerous and deadly weapon;

"That on, towit, the 17th day of November, 1937, this plaintiff, at about the noon hour, was sitting with a group of other persons upon the rail of a railroad switch track, near, but not upon, the premises of said defendant company, and started to rise to go away from said premises; that as he arose, and was in the act of turning to leave, said defendant Clare Shaw, believing that the common purpose and design of said defendants, as aforesaid, could be best served thereby, and in the execution and performance of said common purpose and design, wantonly and recklessly, and in utter disregard of the life, limb and safety of this plaintiff, aimed said deadly weapon, towit, said tear-gas gun, which was then and there loaded with a tear-gas shell and some explosive force capable on discharge of hurling it through the air with great force and violence at the body and person of this plaintiff and discharged the same; that the tear gas shell so discharged from said gun struck this plaintiff in the back of his head, penetrated and fractured his skull, and etc."

Appellee earnestly contends that no question is presented by appellant to this court because the praecipe of appellant to the clerk of the trial court fails to call for the inclusion in the transcript of the summons issued on the filing of the original complaint; and that the transcript does not set out said summons or show the issuance thereof.

The transcript does not show that a summons was issued. However, the transcript does disclose that the appellee, on July 2, 1938, did file its answer in general denial to the appellant's original complaint. The rule is well established that under such circumstances the issuance and service of summons is waived.

In the case of *Louisville, New Albany and Chicago R. W. Co.* v. *Nicholson* (1877), 60 Ind. 158, our Supreme Court said: "The defendant appeared to the action before the justice, without objection to the service of the summons, and went to trial on the merits of the action. That was a waiver of any irregularity that might have occurred in the service of the summons.

"The justice in this case having jurisdiction of the subject-matter of the action by the statute, and the defendant having fully appeared to the action without objection, the jurisdiction of the justice over the defendant became complete, notwithstanding there may have been no service of a summons on the defendant at all.

"For the same reason, after the appearance of the defendant before the justice, it became unnecessary to further notice the summons in the proceedings in the justice's court, or to set it out in the transcript." To the same effect see: *Charlestown School Township* v. *Hay* (1881), 74 Ind. 127; *Trentman* v. *Fletcher, et al.* (1885), 100 Ind. 105, 111; *American Mutual Life Insurance Co.* v. *Mason* (1902), 159 Ind. 15, 64 N. E. 525; *United States Health & Accident Insurance Co.* v. *Clark* (1908), 41 Ind. App. 345, 349, 83 N. E. 760; *Slinkard* v. *Hunter* (1936), 209 Ind. 475, 199 N. E. 560.

We now proceed to a consideration of the demurrer of appellee to each paragraph of the amended complaint

on the ground that each of said paragraphs does not state facts sufficient to constitute a cause of action. The principal contention of appellee, as shown by its memorandum in support of the demurrer to each of said paragraphs, is that each paragraph shows on its face that the injuries sued upon occurred in November, 1937, and that said amended paragraphs of complaint were filed on January 20, 1940, more than two years after the cause of action accrued, and therefore the cause of action set up in said amended paragraphs of complaint is barred by the statute of limitations because each of. said paragraphs states a new and different cause of action than that sued upon in the original complaint. The general rule is that the amendment of a complaint or the filing of additional paragraphs by way of amendment does not amount to the commencement of a new action, and such amendment speaks as of the time the original pleading was filed. Watson's Revision of Works Practice, Vol. 1, p. 555, § 797.

In the case of *Chicago and Erie Railroad Company et al.* v. *Dinius* (1913), 180 Ind. 596, 103 N. E. 652, the Supreme Court said at pp. 616, 617: "As a final objection to the complaint it is alleged that the complaint is an amended complaint filed more than two years after the accident; that it introduces a new cause of action and a different one from that stated in the original complaint, upon which the cause was first tried. This being true, it is contended, the complaint showed on its face that the cause of action set up was barred by the two years' statute of limitations and was therefore subject to demurrer for want of facts. The objection is without merit and wholly unsustained by our decisions. It is not apparent on the face of the complaint that the cause of action

was barred. Nor was a new cause of action stated. The case before us clearly comes within the rule that where an amendment to a complaint sets up no new matter or claim, but merely amplifies and restates with more certainty, or in a different form, the cause of action set out in the original pleading, it relates back to the commencement of the suit, and the statute of limitations is arrested at that point."

And in the case of *Baltimore and Ohio Southwestern Railroad Company* v. *Carroll, Admrx.* (1929), 200 Ind. 589, 163 N. E. 99, the Supreme Court said, at pp. 596, 597: "Where additional or amended paragraphs of complaint are filed after the lapse of the statutory limitation which are founded upon the same transaction as that sued on in the original complaint, and which merely expand or amplify what has already been alleged, they relate back to the commencement of the action at which time the statute of limitations was arrested and they are not affected by the intervening lapse of time. *Chicago and Erie Railroad Company et al.* v. *Dinius* (1913), 180 Ind. 596, 103 N. E. 652; *Cleveland, Cincinnati, Chicago & St. Louis Railway Company* v. *Berkschicker* (1904), 162 Ind. 108, 69 N. E. 1000; *Chicago, St. Louis and Pittsburgh Railroad Company* v. *Bills* (1889), 118 Ind. 221, 20 N. E. 775. And an amendment to a complaint alleging that the parties were engaged in interstate commerce but alleging no different state of facts does not introduce a new or different cause of action, and hence may be made although the limitation period had elapsed."

It is true when the amendment sets up a new and different cause of action and the question arises as to whether it is barred by the statute of limitations, then the date of the filing of the amendment is regarded as the date of the commence-

ment of the action. "The generally accepted and recognized tests by which to determine whether a cause of action stated in an amended pleading is the same as that stated in the original pleading are made by asking the following questions: (1) Will the same evidence support each? (2) Will a judgment on one be a bar to a judgment on the other? (3) Will the same measure of damages govern both? (4) Is each open to the same defense?" Watson's Revision of Works Practice, Vol. 1, p. 556, § 797. An affirmative answer to each of the questions indicates that the cause of action is the same, while a negative answer indicates they are different.

Applying this test to the instant case, we are of the opinion that when applied to each of the paragraphs of amended complaint with reference to the original complaint, they must be answered in the affirmative and therefore the amended paragraphs of complaint speak from the date of the filing of the original complaint. *MacBeth* v. *Benninghoff* (1941), 108 Ind. App. 652, 31 N. E. (2d) 665; *The Attica Building & Loan Association of Attica et al.* v. *Colvert et al.* (1939), 216 Ind. 192, 23 N. E. (2d) 483. Furthermore, the amended paragraphs of complaint do not show on their face that the cause of action accrued more than two years prior to the filing of the amended complaint. There is nothing on the face of the amended paragraphs of complaint which show the date they were filed. In considering the demurrer of appellee the court can only consider the paragraphs demurred to. Other parts of the record cannot weaken nor strengthen such paragraphs. *Slifer* v. *Williard* (1922), 78 Ind. App. 88, 90, 131 N. E. 87; *Funk* v. *Davis et al.* (1885), 103 Ind. 281, 286, 2 N. E. 739. It is doubtful if such a question can be raised by demurrer.

*Charters* v. *Citizens National Bank of Peru* (1925), 84 Ind. App. 15, 145 N. E. 517; *Roberts* v. *Smith, Executor* (1905), 165 Ind. 414, 74 N. E. 894.

Appellee further contends that the first and second paragraphs of amended complaint are insufficient because they merely aver the defendant Shaw was acting as a peace officer in the discharge of his duties, and that in the commission of the acts charged he was not acting as the servant, agent or employee of appellee.

The allegations in the first and second paragraph of amended complaint do not allege that defendant Shaw was a peace officer, nor do they allege that he was selected or employed by a public peace officer. They do specifically allege that Shaw and others went onto the grounds of appellee as the agents and servants of appellee in pursuance of a common purpose to guard and protect the property and employees of appellee, etc. If it could be inferred from the allegations in these paragraphs of complaint that Shaw and others were peace officers, the allegations negative the idea they were at the time acting as such peace officers. The guarding of private property not in the custody of the law is not the function of a police officer and when he is thus engaged he has stepped aside from his official position. *Dickson et al.* v. *Waldron* (1893), 135 Ind. 507, 521, 34 N. E. 506, 35 N. E. 1.

" 'A public officer may, for certain purposes, be the servant of a private corporation; and when such the official character of the servant furnishes no protection to his employer against the consequences of unofficial acts done in the line of employment.' " *Hudson* v. *St. Louis Southwestern Ry. Co. of Texas* (1927), (Tex.), 293 S. W. 811.

We hold the trial court erred in sustaining the de-

murrer of appellee to the first and second paragraph of amended complaint.

We next proceed to a consideration of the demurrer to the third amended paragraph of complaint. In addition to the questions raised as to the first two paragraphs of amended complaint, appellee contends this third paragraph of amended complaint is based upon the theory of a conspiracy and that it is insufficient because it does not show or allege that there was any unlawful purpose on the part of appellee or that any lawful purpose was accomplished through unlawful means. If appellee's theory of this paragraph of complaint were correct, its objection might have merit. However, we are of the opinion that this paragraph of complaint is not based upon the theory of conspiracy but upon the theory of a joint enterprise. Such an enterprise has been defined as follows: "If two or more persons unite in the joint prosecution of a common purpose under such circumstances that each has authority, express or implied, to act for all in respect of the control of the means or agencies employed to execute such common purpose, the negligence of one in the management thereof will be imputed to the others." 5 Am. Jur. 786, § 500.

The Supreme Court of Minnesota, in the case of *Ruth* v. *Hutchinson Gas Co. et al.* (1941), 209 Minn. 248, 296 N. W. 136, 141, said: "There is a joint enterprise where all the parties have a community of interest in the purposes and objects of the undertaking and an equal right in its control and management. As to third persons, each member of a joint enterprise is the agent of the others, and *the acts of one within the scope of the enterprise are the acts of all.*" (Our italics.) To the same effect see: *Illingworth* v. *Madden* (1937), 135 Me. 159, 192 A. 273, 110 A. L. R. 1090; *Lucey* v.

*John Hope & Sons* (1923), 45 R. I. 103, 120 A. 62; *El Paso Electric Co.* v. *Leeper* (1933), (Tex.), 60 S. W. (2d) 187, 189.

The paragraph of complaint under consideration alleges that the defendants, with 25 or 30 others whose names were unknown to appellant, "agreed, combined and confederated together to guard and protect the premises and property of said defendant company (appellee), and its employees engaged in working therein, to assist said company, its agents and servants in the removal of certain goods, wares, chattels and merchandise from said premises, to prevent third persons from entering upon the premises of said defendant company or from in any way interfering with or hindering the removal of said property." It then charges that in the execution and performance of this agreement the defendants and others entered said premises and "took with them for use in carrying out the purpose aforesaid, in the event they or any of them deemed the use thereof necessary or advisable, a supply of deadly and dangerous weapons." It is further alleged that the defendant Shaw, "believing that the common purpose and design of said defendants, as aforesaid, could be best served thereby, and in the execution and performance of said common purpose and design, wantonly and recklessly, and in utter disregard of the life, limb and safety of this plaintiff, aimed said deadly weapon, towit, said tear-gas shell and some explosive force capable on discharge of hurling it through the air with great force and violence at the body and person of this plaintiff and discharged the same; that the tear-gas shell so discharged from said gun struck this plaintiff in the back of his head, penetrated and fractured his skull."

We are of the opinion that the averments in this

paragraph of complaint are sufficient to withstand the demurrer.

The decision of the Dubois Circuit Court is reversed, with instructions to overrule appellee's demurrer to the first, second and third paragraph of amended, complaint.

NOTE.—Reported in 48 N. E. (2d) 75.

## ON PETITION FOR REHEARING.

ROYSE, C. J.—Appellee, in support of its petition for a rehearing, argues that this court will not search the record to reverse the trial court and insists that from the record called for by the praecipe of appellant this court is not able to determine when the cause of action commenced.

Appellee's statement is not correct. The praecipe ordered a transcript of the pleadings, papers, record, entries and proceedings in the above matter, and specifically requested the inclusion of appellee's answer in general denial, which answer was filed on July 2, 1938, and this was well within the time when the original action could have been commenced.

Upon a full re-consideration of the issues involved, we find no reason for changing our opinion.

The petition for rehearing is denied.

NOTE.—Reported in 48 N. E. (2d) 999.