Connie Ann TAPP, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–180–A–17.

Court of Appeals of Indiana,
First District.

June 23, 1980.

Rehearing Denied Aug. 22, 1980.

Arthur Griffith, Evansville, for defendant-appellant.

Theo. L. Sendak, Atty. Gen., Janis L. Summers, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Appellant Connie Ann Tapp (Tapp) appeals from a conviction of the crime of battery, a class D felony, and from a two year sentence to the Indiana Women's Prison.

## FACTS

The facts most favorable to the state are as follows. On April 14, 1979, off duty Evansville police officer, Bertus Weisheit (Weisheit), was working as a plainclothes security guard at the North Park Sears store in Evansville, Indiana. From a concealed spot within the Sears store Weisheit observed Tapp wrap a pair of children's shoes in a pink baby blanket and put them into her purse. He watched as she continued to walk through the children's department toward the front door. When Tapp reached the front door, Weisheit left his observation point, lost sight of Tapp for two or three seconds, then followed her out of the door. As Weisheit approached Tapp he displayed his badge and announced: "I am a City Police Officer and you're under arrest for shoplifting." He then asked her to open her purse. She refused. A scuffle ensued involving Officer Weisheit, Tapp, and Tapp's sister, all of whom ended up back inside the Sears store. Weisheit suffered three bites on his right arm which Tapp admitted inflicting on him since she thought he was a purse snatcher. A customer witnessing the fray saw the shoes drop to the floor inside the store, and both the shoes and blanket were recovered by a Sears clerk at the site of the scuffling inside the front entrance of the store. The state filed its information charging Tapp with battery of a law enforcement officer, and after trial by jury she was convicted as charged.

## ISSUES, DECISION, AND DISCUSSION

█ Although appellant raised fifty (50) allegations of error in her motion to correct errors, only a few issues can be considered as preserved for appeal. Appellant waived most of the allegations of error either expressly in her brief or impliedly by failure to support her allegations with authority, location in the record, or argument. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). Most of appellant's arguments are simply a rephrasing of the allegations raised in the motion to correct errors. Mere assertions of error unsupported by cogent argument or authority preserve nothing for appeal. *Henderson v. State*, (1956) 235 Ind. 132, 131 N.E.2d 326, *cert. denied*, 351 U.S. 958, 76 S.Ct. 855, 100 L.Ed. 1480 (1955); *Cammack v. State*, (1970) 254 Ind. 637, 261 N.E.2d 862. Because this court will decide an appeal on its merits wherever possible, however, we have grouped appellant's alleged errors which we consider preserved for appeal into three major issues for purposes of a coherent and efficient discussion.

█ The majority of appellant's allegations of error concern the trial court's overruling her objections to testimony and evidence presented by the state having to do with the circumstances surrounding the incident and with impeachment evidence. Appellant's counsel continually objected to the state's evidence on the grounds that it was irrelevant and highly prejudicial. As a general rule, the admissibility of evidence is within the sound discretion of the trial court. *Pack v. State*, (1974) 162 Ind.App. 107, 317 N.E.2d 903, *trans. denied*; *State v. Lee*, (1949) 227 Ind. 25, 83 N.E.2d 778. It is also well established that happenings near in time and place which complete the story of the crime are admissible under the theory of *res gestae*. *Mack v. State*, (1978) Ind.App., 380 N.E.2d 592; *Maldonado v.*

*State*, (1976) 265 Ind. 492, 355 N.E.2d 843; McCormick, Evidence § 190 (2d ed. 1972). Moreover, the trial court is given wide latitude in weighing the probative value of evidence as against the possible prejudice of its admission. *Sizemore v. State*, (1979) Ind., 395 N.E.2d 783; *Boles v. State*, (1975) 163 Ind.App. 196, 322 N.E.2d 722. Only where the trial court's action has resulted in such serious prejudice to the defendant that the trial court may be said to have abused its discretion will the trial court's actions be disturbed. *Porter v. State*, (1979) Ind., 391 N.E.2d 801. No prejudice having been shown by appellant as to the admission of the surrounding and impeaching facts, we may not say as a matter of law that the trial court abused its discretion.

█ The second area of alleged error involves appellant's contention that, though she committed the battery, she was acting in self defense. We acknowledge that "the burden is on the State to negate the claim of self-defense." *Woolum v. State*, (1978) Ind.App., 381 N.E.2d 1072, 1074. The question of self defense, however, is one for the trier of fact. *Cammack v. State, supra; Scruggs v. State*, (1974) 161 Ind.App. 666, 317 N.E.2d 807. Where the evidence is conflicting, the trier of fact may reject the defendant's version of what happened. *Woolum v. State, supra; Cammack v. State, supra.* On review, this court will not weigh the evidence or judge the credibility of witnesses. *Jones v. State*, (1978) Ind., 372 N.E.2d 1182; *Walton v. State*, (1980) Ind., 398 N.E.2d 667. We shall consider only the evidence most favorable to the state and all reasonable inferences which may be drawn therefrom. *Moore v. State*, (1978) Ind., 381 N.E.2d 523. "There is no requirement for the State to specifically introduce evidence to refute the elements of self-defense. Such may be done by the evidence in its entirety in the State's case in chief." *Hester v. State*, (1978) 267 Ind. 697, 373 N.E.2d 141, 142. To hold that the jury could have found beyond a reasonable doubt that Tapp did not act in self defense, "this court need

not find evidence adequate to overcome every reasonable hypothesis of innocence, but need find only that a reasonable inference may be drawn from the evidence which tends to support the finding of guilt." *Smith v. State*, (1980) Ind.App., 403 N.E.2d 869. We find no error merely because the finder of fact rejected appellant's claim of self defense.

In several other allegations appellant asserts error in the trial court's dealing with the status of the victim as a law enforcement officer. Appellant contends that the trial court erred in overruling her motion to withdraw the question of battery of a law enforcement officer from the jury because the state did not prove that at the time of the offense victim Weisheit was a law enforcement officer. A verdict, of course, will not be disturbed on appeal when there is sufficient evidence of probative value to prove every element of the crime beyond a reasonable doubt. *Schilling v. State*, (1978) Ind., 376 N.E.2d 1142. When looking only to the evidence most favorable to the state and to all the reasonable inferences flowing therefrom, in this case we find that appellant raises a legitimate question as to whether the state proved beyond a reasonable doubt that the victim was a law enforcement officer within the contemplation of IC 1971 35–42–2–1 (Burns Code Ed., Repl. 1979), the statute under which appellant was charged and convicted. For the reasons set forth below we hold that the state did so prove and therefore affirm the judgment of the trial court.

*Ind.Code* 35–42–2–1 provides the following definition of battery:

"BATTERY.—A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a class B misdemeanor. However, the offense is:

(1) A class A misdemeanor if it results in bodily injury to any other person, or if it is committed against a law-enforcement officer [1] or against a person sum-

---

1. "Law enforcement officer" is defined in IC 35–41–1–2 as

"(1) A police officer, sheriff, constable, marshal, or prosecuting attorney;

moned and directed by the officer while the officer is engaged in the execution of his official duty;

(2) A class D felony if it results in bodily injury to such an officer or person summoned and directed; and

(3) A class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon. [IC 35–42–2–1, as added by Acts 1976, P.L. 148, § 2, p. 718; 1977, P.L. 340, § 30, p. 1533.]" [2]

Implicit in the issue at hand are the questions of whether the legislature intended that the clause "while the officer is engaged in the execution of his official duty" be included as an element to be proved in a class D felony when the battery results in bodily injury to a law enforcement officer and, if so, was Weisheit so engaged.

■ On its face, the statute is ambiguous; a grammatical analysis results in two possible interpretations. The clause set out above appears to modify only the last part of the IC 35–42–2–1(1) sentence which reads "or against a person summoned and directed by the officer." This is the position adopted by the commentator to West's Annotated Indiana Code. *See* "Commentary," West's A.I.C. 35–42–2–1. Under this interpretation the elements of battery as a class D felony would consist of (1) knowingly or intentionally (2) touching (3) in a rude, insolent, or angry manner (4) a law enforcement officer (5) with resulting bodily injury to the officer. This interpretation would give law enforcement officers as defined by the statute a special status for purposes of the battery statute. A second interpreta-

tion flows from the unorthodox punctuation employed in the IC 35–42–2–1(1) sentence. Unfortunately, this type of punctuation characterizes much legislative writing and bears little, if any, relationship to accepted American literary standards. The comma appearing between "person" and "or" seems to indicate that the above-mentioned clause modifies the entire second half of the parallel construction following the comma. In other words, the elements of battery as a class D felony under this interpretation would include (1) knowingly or intentionally (2) touching (3) in a rude, insolent, or angry manner (4) a law enforcement officer (5) while the officer is engaged in the execution of his official duty (6) with resulting bodily injury to the officer. There is no existing Indiana case law establishing the correct interpretation. Thus, we have turned for guidance to the legislative purpose undergirding this and related statutes which provide for increasingly severe penalties when crimes are committed against law enforcement officers and to existing case law in other jurisdictions with similar statutes. These considerations lead us to conclude that the second is the correct interpretation. We hold, therefore, that a battery is a class D felony pursuant to IC 35–42–2–1 when it results in bodily injury to a law enforcement officer who is engaged in the execution of his official duty.

Two Indiana criminal statutes which are similar to the battery statute in providing increased penalties when the victim is a law enforcement officer are IC 35–44–3–3, "Resisting law enforcement," and IC 35–50–2–9, "Death sentence." The "Resisting law enforcement" statute [3] uses a phrase almost

---

"(2) A deputy of any of those persons; or
"(3) An investigator for a prosecuting attorney."

**2.** IC 35–42–2–1 has subsequently been amended by additions not pertinent here.

**3.** IC 35–44–3–3:
"(a) A person who knowingly or intentionally:
(1) Forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully

engaged in the execution of his duties as an officer;
(2) Forcibly resists, obstructs, or interferes with the authorized service or execution of a civil or criminal process or order of a court; or
(3) Flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop; commits resisting law enforcement, a class A misdemeanor. However, the offense is a class D felony if, while committing it, the person draws or uses a deadly weapon or inflicts bodily injury on another person.

identical to the phrase at issue here, "while the officer is lawfully engaged in the execution of his duties as an officer," but neither the statute itself nor the case law dealing with it shed any light on the problem at hand. The "Death sentence" statute, on the other hand, is more helpful. Subsection (b)(6) of this statute provides that the death sentence may be sought upon conviction of homicide where one of the aggravating circumstances alleged is that:

"the victim of the murder was a corrections employee, fireman, judge, or law enforcement officer and either

"(i) the victim was acting in the course of duty or

"(ii) the murder was motivated by an act the victim performed while acting in the course of duty."

IC 35–50–2–9(b)(6).

In comparing this statute with the prior sentencing statute the commentator to West's Annotated Indiana Code § 35–42–1–1 at 8 states the following:

"Judges are added to the victim list and killings motivated by an act the victim performed in the line of duty are included, in addition to the cases where the victim is on duty at the time of the murder. Use of the concept of motive as an element that can give rise to a death sentence includes the situations where the victim may be at home at the time of a revenge killing. At the same time the motive approach avoids including homicides that are unrelated to the official's function, (such as a homicide motivated by domestic problems), inherent in an approach that includes a class of victims regardless of whether they are "on duty". Proof of the motive may be difficult in certain cases; however, the motive approach does foster the policy of attempting to afford some additional protection to persons who, because of their official duties, may have a higher than normal potential to become homicide victims."

(b) For purposes of this section [35–44–3–3], a law enforcement officer includes an alcoholic beverage enforcement officer. [IC 35–44–3–3,

This analysis of the statute is appealing in that it touches on the *mens rea* element which is a requisite of criminal culpability, as well as the purpose of providing a more stringent penalty when the victim is a public official who is subject to increased risks of becoming a "victim." Such reasoning should apply by analogy to the interpretation of the battery statute.

It is generally assumed that the penalties imposed for criminal acts serve as a deterrent to criminal behavior and that the greater the penalty, the greater the deterrent. The purpose, as pointed out above, for providing increased penalties for crimes when committed against a public official, such as a police officer, is to afford a greater degree of protection to persons who might be subjected to special risks because they are performing public duties. *People v. Tripp,* (1978) 61 Ill.App.3d 507, 18 Ill.Dec. 809, 378 N.E.2d 273; *People v. Hanson,* (1972) 53 Ill.2d 79, 289 N.E.2d 611, *cert. denied* 411 U.S. 937, 93 S.Ct. 1916, 36 L.Ed.2d 398; *People v. Prante,* (1972) 177 Colo. 243, 493 P.2d 1083; *People v. Beachem,* (1963) 223 Cal.App.2d 383, 35 Cal. Rptr. 673. Were added protections not provided by society for the increased risks inherent in this type of public service, persons might be reluctant to assume the responsibilities of such offices. Thus, public policy requires that law enforcement officials who are subject to the greater threats of battery than the ordinary citizen be given additional protection, but only when the increased risks result from actions involving the execution of their official duties. Otherwise, there would be no rational relationship between the class of persons singled out by the statute for special treatment and the purpose of the legislation. "It will not be presumed that the General Assembly intended to enact an unconstitutional law . . . .." 5 I.L.E. "Constitutional Law" § 39 (1958). Where statutory language permits more than one interpretation, that meaning which carries out the legislative intent will be preferred. *State v. Rice,*

as added by Acts 1976, P.L. 148, § 61; 1979, P.L. 83, § 11.]"

(1956) 235 Ind. 423, 134 N.E.2d 219. Even though penal statutes must be narrowly construed, such construction must be balanced against the presumed constitutionality of the statute. *State v. Bigbee*, (1973) 260 Ind. 90, 292 N.E.2d 609.

Our position is supported also by case law in our sister jurisdictions of Ohio and Illinois. The Ohio Court of Appeals in *State v. Glover*, (1979) 52 Ohio App.2d 35, 367 N.E.2d 1202, faced a situation very similar to the case at bar. An off duty Columbus, Ohio, police officer, out of uniform and working as a security guard for Kroger's, observed appellant in that case conceal a piece of sausage on his person. The officer stopped appellant at the exit, displayed his badge, informed appellant that he was a Columbus police officer, and placed him under arrest. A scuffle ensued while the officer was escorting appellant to the rear of the store. Appellant was subsequently charged and convicted of resisting arrest. Upon appeal the Ohio court asserted without citation to case law or statute:

"A duly commissioned police officer holds a public office upon a continuing basis. The officer here remained an officer of the law, and his obligation to preserve the peace was not nullified by the fact he was working for Kroger in this case. Notwithstanding, the officer, even though acting as a private security policeman, had the right and duty to arrest and detain a person who was violating a law of this state or an ordinance of the city of Columbus until a warrant could be obtained. Therefore, it was not error for the trial court to find appellant guilty of resisting arrest within the facts and circumstances of this particular case."

*Id.*, 367 N.E.2d at 1204.

In a case even more nearly identical to the case at bar the Illinois Appellate Court reached the same conclusion as the Ohio court. *People v. Barrett*, (1977) 54 Ill. App.3d 994, 370 N.E.2d 247, involved an appeal from a conviction of aggravated battery where the defendant struck an off duty police officer engaged as a security guard at a Giant store in Rockford, Illinois.

The officer was in his police uniform when he informed defendant that he was under arrest and the melee ensued. The Illinois statute pertaining to the offense provides that an aggravated battery is committed when:

"(b) A person who, in committing a battery . . .:

\* \* \* \* \* \*

(6) Knows the individual harmed to be a peace officer, or a person summoned and directed by him, or a correctional officer, while such officer is engaged in the execution of any of his official duties including arrest or attempted arrest[.]"

Ill.Rev.Stat.1975, ch. 38, § 12–4(b)(6).

In interpreting this statute the Illinois court said, "It is clear that an essential element of the offense of aggravated battery of a peace officer is that the officer be engaged in the execution of his official duties." *People v. Barrett, supra*, 370 N.E.2d at 248. The court also noted that the question as to whether an off duty policeman employed as a security guard was engaged in the execution of his official duties when he informs a shoplifter that he or she is under arrest was a question of first impression in that state. The court relying on several Federal cases brought under the Civil Rights Act dismissed defendant's argument that the state must establish that the officer was executing official duties either by showing a city ordinance requiring the officer to be on duty twenty-four hours or by the testimony of a superior officer that he was in fact on duty at all times, saying that

"It is immaterial for the purpose of establishing that Officer Lyerla was in the execution of his official duties, whether he was on duty or required to be on duty at the time of the arrest, because an officer's duties are not constrained by specific time or place limitations. *It is the nature of the acts performed by the officer which determine whether the officer was in the execution of his official duties.* Accordingly, we hold that the evidence in the instant cause conclusively established that Officer Lyerla was in the

process of making an arrest for shoplifting, which is within the execution of his official duties as a peace officer." (Emphasis ours).

*Id.*, 370 N.E.2d at 249.

We note that appellant in the instant case supports her arguments with citations to several Indiana statutes relating to police officers: IC 18–1–11–7, "Duties of police force," which was recently amended, *inter alia*, by the deletion of the phrase "at all times"; IC 19–1–16–1, "Police—Worktime —Exceptions—Court appearances," which provides that, except in cases of public emergency, no police officer shall be required to work more than six days of eight hours each in any one week or more than an average of forty-eight hours per week in any one calendar year; and IC 18–1–11–5, "Special duties—Special fire and police officers," which provides that commissioners of public safety may, if they deem it expedient, detail regular police officers to do special duty at any place within a city. Appellant contends that the logical conclusion following from these statutes is that Officer Weisheit could not possibly have been engaged in performing official duties because the state did not prove that Weisheit was working either on his regular shift or on special duty. We disagree.

*Ind.Code* 18–1–11–7 spells out the duties of members of the police force in pertinent part as follows: "The police force shall, within the city, preserve peace; prevent offenses; detect and arrest offenders; . . protect the rights of persons and property; . . . and enforce and prevent the violation of all ordinances and laws in force in the city." No time limit is mentioned either in this statute or in IC 18–1–11–4 which sets out the powers of policemen, among which is the power to arrest "all persons who within view violate the statutes of this state, or the ordinances of the city . . .." It seems unlikely that, if Officer Weisheit or any other police officer, while off duty and not employed as a security guard, had, for example, observed a fracas in the parking lot of a shopping center, he or she would not have considered it his or her duty to attempt to restore the peace. We would also direct appellant's attention to Judge Hoffman's recent opinion in *Indiana Association of Private Detectives v. Turczynski*, (1980) Ind.App., 402 N.E.2d 1003, (petition for transfer pending). Here, Judge Hoffman held that IC 19–1–16–1 does not prevent police officers from working longer hours than those outlined in the statute, if they so choose, and that IC 18–1–11–5 lends support to the proposition that it is not against public policy to permit police officers to work during their off duty hours as security guards for private businesses. Furthermore, we would distinguish those tort cases which hold that an off duty police officer is not engaged in the line of duty if he wrongly inflicts injuries on another, because for the courts to have held otherwise would have meant that such damages would have gone uncompensated under the doctrine of governmental immunity applicable at that time. *See Hogle v. Reliance Manufacturing Co.*, (1943) 113 Ind. App. 488, 48 N.E.2d 75, 999, *trans. denied*; *Hudson v. St. Louis Southwestern Ry. Co. of Texas*, (1927) Tex.Com.App., 293 S.W. 811.

■ We agree with the Illinois court and the line of federal cases on which it relies that it is the nature of the acts performed and not whether the officer is on or off duty, in or out of uniform, which determines whether the officer is engaged in the performance of his official duties. We hold, therefore, that the state proved that Officer Weisheit was a law enforcement officer engaged in the performance of his official duty for purposes of IC 35–42–2–1 when it proved that he was an Evansville police officer, displayed his police badge and announced his status to appellant Tapp, and informed her that she was under arrest pursuant to the laws of this state even though he was off duty, out of uniform, and employed as a security guard by a private employer. The court did not err in refusing to grant appellant's motion to remove this issue from the jury.

Affirmed.

ROBERTSON, P. J., and NEAL, J., concur.