**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 11 2012, 8:07 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BARBARA J. SIMMONS**
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CORTEZ MARTIN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1110-CR-896 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Becky Pierson-Treacy, Judge
The Honorable Shatrese Flowers, Commissioner
Cause No. 49F19-1105-CM-32747

**May 11, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Cortez Martin appeals his conviction for battery on a law enforcement officer as a class A misdemeanor.[1] Martin raises one issue, which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

The facts most favorable to Martin's conviction follow. On May 9, 2011, Indianapolis Metropolitan Police Officers Michael Leary and Jerry Torres, wearing full police uniforms, were at Carriage House East Apartments in connection with a previous disturbance call. As the officers were leaving and as Officer Leary began to pull out in his fully marked police vehicle, a woman flagged him down, and Officer Leary stopped to speak with her. The woman pointed towards Martin, who was standing on a sidewalk on the same street, and stated that he had been following her son throughout the day and did not know why he was doing so. Officer Leary notified Officer Torres over the radio that they needed to check out Martin and the situation.

Officers Leary and Torres approached Martin, and Officer Torres began to question Martin "as to what he was doing there." Transcript at 11. Officer Torres asked Martin if he lived in the complex and what he was doing there. Martin said that he did not live there, became very agitated, began pacing, and continued to put his hands in his pockets after the officers instructed him several times not to do so. He stated that he did not do anything and did not understand why he was being stopped and kept putting his left hand in his pocket. Officers Leary and Torres repeatedly told him to remove his hand from his pocket.

_____

[1] Ind. Code § 35-42-2-1(1) (Supp. 2009).

2

Officer Torres asked Martin if he had any guns or knives in his pockets, and Martin did not answer the question and did not take his hands out of his pockets. Officer Torres then told Martin that he was going to pat him down for weapons and started to reach for Martin's pocket. Officer Torres moved his left hand toward Martin's pocket, and Martin quickly removed his hand from his pocket and grabbed and placed his whole hand around Officer Torres's left wrist as to push it away and prevent him from touching that pocket. Officer Torres then turned Martin around and placed him in handcuffs. Officer Torres checked Martin's pocket, felt an object which felt like a silhouette of a knife, and then reached in the pocket and pulled out a black folding cutlery knife.

On May 10, 2011, the State charged Martin with: Count I, battery on a law enforcement officer as a class A misdemeanor; and Count II, resisting law enforcement as a class A misdemeanor. At a bench trial, the court heard the testimony of Officers Leary and Torres and Martin. Officer Leary testified that he could not remember the exact number of times Martin was asked to keep his hands out of his pockets, but that it was more than one time. Officer Torres testified that Martin's pacing concerned him and caused him to believe that Martin was thinking of running or assaulting an officer. On cross examination, Officer Torres testified that the Indianapolis Metropolitan Police Department ("IMPD") had an agreement with Carriage House Apartments under which IMPD officers may act "as agents to enforce the trespassing laws of that complex." Transcript at 31. When asked if he was "acting as an agent of the complex," Officer Torres stated: "That and as an IMPD officer." Id. On redirect examination, when asked "[w]hen you originally stopped the defendant, you were not concerned about trespassing

at that point, were you," Officer Torres stated "[n]o" and that the reason was "[b]ased on what Officer Leary told [him] about the complaint." Id. at 34. When asked why he approached Martin, Officer Torres testified: "To figure out whether: one, he lived there; two and to identify him and see if the validity of the complaint was true." Id. at 35. In addition, Officers Leary and Torres testified that they were lawfully engaged in their duties at the time of the incident.

Martin testified that he had his hands and his phone in his pockets, that he did not hear the officers' instruction to take his hands out of his pockets or ask him if he had a weapon, and that the officers grabbed him when he was trying to pull his phone out of his pocket. In closing, the prosecutor argued that Officer Torres was engaged in the execution of his official duty when Martin grabbed his wrist. Martin's counsel argued that the officers were not fully engaged in their duties as IMPD officers at the time they stopped Martin, that they stopped Martin because of their agreement with the Carriage House Apartments, and that therefore the officers were acting as agents for the Apartments. The prosecutor argued that the officers engaged Martin based on a concerned citizen request.

The court found Martin guilty on Count I, battery on a law enforcement officer as a class A misdemeanor, and not guilty on Count II. The court sentenced Martin to 365 days with credit for one day for time served and the remainder of the sentence suspended to probation. The court also ordered Martin to perform forty hours of community service work.

The issue is whether the evidence is sufficient to sustain Martin's conviction for battery on a law enforcement officer as a class A misdemeanor. The offense is governed by Ind. Code § 35-42-2-1, which provides in part that "[a] person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor" and that "[h]owever, the offense is . . . a Class A misdemeanor if . . . it is committed against a law enforcement officer or against a person summoned and directed by the officer while the officer is engaged in the execution of the officer's official duty . . . ." In its charging information for Count I, the State alleged that Martin "did knowingly touch [Officer Torres], a law enforcement officer with the Indianapolis Metropolitan Police Dept., in a rude, insolent or angry manner while said officer was engaged in the execution of his official duty." Appellant's Appendix at 15.

Martin argues that he denied touching Officer Torres during their encounter, that he did not hear the officer tell him to take his hands out of his pockets, and that "even if he did touch Officer Torres' wrist it could certainly have been reflexive and not intentionally or knowingly." Appellant's Brief at 8. Martin further argues that "[i]t is unclear from the record that Officer Torres was acting as a police officer engaged in the execution of his official duty or as an agent of the apartment complex in approaching [him]." Id.

The State argues that Officer Torres was acting in his official duty when he stopped Martin in response to a citizen complaint, that Officers Torres and Leary had just dealt with a reported disturbance when a woman complained that Martin had been following her son, that both officers were wearing full police uniforms when they

5

approached Martin, and that Officer Torres's primary concerns were to investigate the complaint and ascertain Martin's identity. The State asserts that although IMPD had a contract with the Carriage House Apartments to enforce against trespassing, Officer Torres was not concerned about trespassing when he stopped Martin. The State also asserts that Officer Torres was acting in his official duty when Martin grabbed his wrist because, at the time, Officer Torres was attempting a pat down search for weapons. The State argues that Officer Torres's "suspicion had been aroused by Martin's refusal to remove his hands from his pockets and his refusal to answer whether he had any knives or guns, when it turned out he was carrying a knife in his pocket" and Officer Torres's "action of undertaking a pat-down, done for the officers' safety and that of the public, but entailing a risk to Officer Torres, falls squarely within the bounds for which the Legislature enacted the enhanced penalty provision for battering an officer." Appellee's Brief at 7-8.

When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the conviction. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. Id. We consider conflicting evidence most favorably to the trial court's ruling. Id. We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. Id. at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. Id.

6

To the extent that Martin argues that the evidence is insufficient because he denied at trial that he had grabbed the wrist of Officer Torres and testified that he did not hear the officers' commands to take his hands out of his pockets or ask him if he had a weapon, we note that the argument is an invitation to reweigh the evidence, which we cannot do.  See Drane, 867 N.E.2d at 146.

With respect to Martin's argument that Officer Torres was not acting in his official duty at the time Martin grabbed his wrist, we note that the purpose for providing increased penalties for crimes when committed against a public official such as a police officer is to afford a greater degree of protection to persons who might be subjected to special risks because they are performing public duties.  Masotto v. State, 907 N.E.2d 1083, 1085 (Ind. Ct. App. 2009) (citing Tapp v. State, 406 N.E.2d 296, 300 (Ind. Ct. App. 1980)).  "[P]ublic policy requires that law enforcement officials who are subject to the greater threats of battery than the ordinary citizen be given additional protection, but only when the increased risks result from actions involving the execution of their official duties."  Id.  "A police officer's official duties include inter alia: arresting, without process, 'all persons who within view violate statutes'; enforcing municipal ordinances; and suppressing 'all breaches of the peace within their knowledge.'"  Id. (citing Ind. Code § 36-8-3-6(c)).  In addition, this court has observed that "it is the nature of the acts performed and not whether the officer is on or off duty, in or out of uniform, which determines whether the officer is engaged in the performance of his official duties."  Nieto v. State, 499 N.E.2d 280, 282 (Ind. Ct. App. 1986).

The record reveals that Officers Leary and Torres were at the Carriage House East Apartments in connection with a previous disturbance call when a woman made a complaint regarding Martin, and that the officers were wearing full police uniforms when they approached Martin. Officer Torres testified that IMPD had an agreement with Carriage House Apartments whereby officers could act as agents for the complex to enforce the trespassing rules of the complex and that when he initially stopped Martin he was not concerned with trespassing but with the complaint made by the woman who had flagged down Officer Leary. Moreover, the evidence shows that Martin grabbed the wrist of Officer Torres when the officer reached towards Martin's pocket to pat him down for weapons.

Based upon the record, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could have found that Officer Torres was engaged in the execution of his official duty at the time Martin grabbed his wrist and that Martin was guilty of battery on a law enforcement officer as a class A misdemeanor. See Masotto, 907 N.E.2d at 1085-1086 (holding that the evidence was sufficient to support the trial court's conclusion that the defendant battered a law enforcement officer while the officer was engaged in his official duty and to sustain the defendant's conviction for battery on a law enforcement officer as a class A misdemeanor); see also Nieto v. State, 499 N.E.2d 280, 281-282 (Ind. Ct. App. 1996) (holding that the evidence was sufficient to sustain the defendant's conviction for battery against a law enforcement officer as a class A misdemeanor and finding that the officer was engaged in the execution of his official duties, although he was off-duty and dressed

8

in plain clothing at the time of the incident, as the officer was attempting to preserve peace and prevent the commission of criminal acts when encountering the defendant).

For the foregoing reasons, we affirm Martin's conviction for battery on a law enforcement officer as a class A misdemeanor.

Affirmed.

BAKER, J., and KIRSCH, J., concur.